John E. SHIMOTA and Nan B.
Shimota, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 106–89T.

United States Claims Court.

Sept. 10, 1990.

Thomas J. O'Rourke, with whom was Virginia J. Townsend and G. Jerry Shaw, Washington, D.C., for plaintiff.

Kenneth C. Gobetz with whom was Gerald B. Leedom and Asst. Atty. Gen. Shirley D. Peterson, Washington, D.C., for defendant.

## OPINION

ROBINSON, Judge.

This case is before the court on the parties' cross-motions for summary judgment. John E. Shimota and Nan B. Shimota (plaintiffs) seek a tax refund in the amount of $17,784.30 for tax year 1987. The issue presented in the case is whether the lump-sum distribution which John E. Shimota (plaintiff) elected under 5 U.S.C. § 8343a to receive from the Civil Service Retirement and Disability Fund (the Fund)[1] is "an amount received under an annuity contract" and "not received as an annuity" and is therefore taxable under § 72(e) of the Internal Revenue Code (IRC) of 1986 or whether it is a tax free return of capital. If the lump-sum distribution is taxable under § 72(e), the issue is then whether plaintiffs are liable for the penalty under § 72(t) of the IRC. For the following reasons, the court will hold that the lump-sum distribution is taxable as an annuity contract under § 72(e) and that the 10 percent additional tax provision of § 72(t) applies. Therefore, the court will deny plaintiffs' motion for summary judgment and will grant defendant's cross-motion for summary judgment on both issues.

### Factual Background

Plaintiffs are husband and wife who filed joint tax returns in 1987 and 1988 in accordance with instructions they received from the Internal Revenue Service (IRS) in two December 4, 1987 letters.[2] Plaintiff was a law enforcement officer for the Federal Bureau of Investigation (FBI) from June 24, 1963, until his retirement on November 26, 1986.[3] While employed with the FBI, he participated in the Civil Service Retirement System (CSRS). Federal employees hired prior to January 1, 1984 participate in the CSRS and are required to contribute part of their salary to the CSRS. 5 U.S.C. § 8334. Under this system, plaintiff's mandatory contributions were withheld from his gross salary. His total contributions to the CSRS were $53,382.77.

The amounts withheld from plaintiff's salary were taxed in the years in which the deductions were made. *See Hogan v. United States*, 513 F.2d 170, 175 (6th Cir. 1975). However, the amounts the FBI contributed and the interest earned on plaintiff's and the FBI's investments in the Fund were not taxed. 26 U.S.C. § 402(a). Taxes on the FBI's contributions and earned interest would only become due upon distribution. 26 U.S.C. § 402(a).

If a federal employee covered by CSRS left government service, he previously had two options available to him: elect to receive a refund of his contributions to the CSRS under 5 U.S.C. § 8342, which would void his right to an annuity; or, elect to receive the basic or full annuity under 5 U.S.C. § 8336 and 5 U.S.C. § 8339. However, with the recent enactment of 5 U.S.C. § 8343a, the employee could choose to receive an alternative form of annuity consisting of a lump sum credit and payment of an annuity under 5 U.S.C. § 8343a(b).

In this case plaintiff chose not to receive the basic or full annuity (computed in accordance with 5 U.S.C. § 8339) or the basic annuity and a survivor annuity (under 5

1. The Fund consists of contributions made by federal employees and Government agencies, together with earnings on these amounts. The Fund is an Independent Trust. 31 U.S.C. § 1321(88). Employing agencies deduct a specified amount from each employee's salary and contribute an equal amount. 5 U.S.C. § 8334(a)(1); 5 C.F.R. § 831.111.

2. The parties stipulated to the pertinent facts in a document filed October 13, 1989. RUSCC 56(d)(3). This factual background relies primarily upon the stipulated facts.

3. In addition, Mr. Shimota served in the U.S. Navy from January 1, 1957 through June 3, 1959, and the U.S. Marine Corps from June 3, 1959 through May 29, 1963. Plaintiff elected to deposit a total of $1,297.34 to the CSRS in order to receive retirement credit under the CSRS for his military service. This deposit was contributed through withholding from his salary from October 15, 1983 through September 29, 1984.

U.S.C. 8341(b)(1) and computed under 5 U.S.C. §§ 8339 and 8341(b)(1)). Rather, plaintiff chose the "alternative form of annuity" described in 5 U.S.C. § 8343a(b). He made his election and on August 3, 1987 received a lump-sum distribution from the Fund of $53,382.77, less withheld income taxes. The taxability of the "alternative form of annuity," specifically the lump-sum payment of $53,382.77 provided for in 5 U.S.C. § 8343a(b), is the issue.[4]

Annuity payments made under the "alternative form of annuity" are computed in accordance with Office of Personnel Management (OPM) Regulation 5 C.F.R. § 831.2205.[5] That Regulation, in effect, reduces the annuity payments that a retiree would otherwise have received based upon the present value of the lump-sum payment had he elected the full annuity option. Defendant contends that under this OPM Regulation, which is designed to comply with 5 U.S.C. § 8343a(c)[6], the lump-sum payment is treated as an accelerated payment of amounts that would otherwise be distributed to the retiree over the expected duration of the CSRS annuity.

Plaintiff's retirement was effective December 1, 1986. His first payment under the full annuity option (with a reduction to provide for a survivor annuity for his wife) was due April 1, 1987. In a letter dated May 11, 1987, OPM notified plaintiff that he had two annuity options available to him—he could elect either a regular annuity or an alternative annuity—but if he elected the alternative annuity, he would receive a reduced annuity and, that "you will also receive a refund of all of your retirement contributions." In a second letter from OPM dated May 11, 1987, plaintiff was advised that his lump-sum "credit" for income tax purposes was $53,382.77, and that this amount consisted solely of his contributions to the CSRS.

On June 6, 1987, plaintiff elected to receive the alternative form of annuity provided for under 5 U.S.C. § 8343a(b). On August 3, 1987, he received from the Fund a lump-sum distribution of $53,382.77, less withheld income taxes. A reduction of $199 in his monthly CSRS annuity was made to reflect the lump-sum payment.

Plaintiff requested the IRS to issue a private letter ruling explaining the federal income tax consequences of the payments he received from the Fund. The IRS, in two separate letters dated December 4, 1987, advised plaintiff that only 4.1 percent of the CSRS annuity payments and only 5.9 percent of the lump-sum distribution were excludable from gross income.

Plaintiffs filed their 1987 federal income tax return in accordance with the IRS' guidelines. They also reported that they were liable for a 10 percent early withdrawal penalty even though the IRS failed to mention the applicability of this penalty in its letter rulings. In June, 1988, plaintiffs filed a claim for refund, Form 1040X,

---

4. Plaintiff did not have available as an option the "lump sum credit" described in 5 U.S.C. § 8336, since he did not leave federal employment prior to meeting the requirements of 5 U.S.C. § 8336. Assuming that he could have made such an election and had done so, he would have lost all annuity rights based upon his service and forfeited all matching Government contributions to the Fund. But under 5 U.S.C. § 8343a no such forfeiture occurs.

5. 831.2205—*Computation of alternative form of annuity.*—

(a) To compute the beginning rate of annuity payable to a retiree who elects an alternative form of annuity, OPM will first compute the monthly rate of annuity otherwise payable under subchapter III of chapter 83 of Title 5, United States Code, including all reductions provided under the subchapter other than those in § 8343a. *That monthly rate is then reduced by an amount equal to the retiree's lump-sum credit divided by the present value factor for the retiree's attained age* (in full years) *at the time of retirement.* The reduced monthly rate is then rounded to the next lowest dollar and becomes the rate of annuity payable.

(Emphasis added.)

6. 5 U.S.C. § 8343a(c) provides:

Each alternative provided for under subsection (b) shall, to the extent practicable, be designed such that the present value of the benefits provided under such alternative (including any lump-sum credit) is actuarially equivalent to the present value of the annuity which would otherwise be provided the employee or Member of this subchapter, as computed under subsections (a)-(i) and (n) of section 8339 of this title.

seeking a refund of $17,784.30 plus all interest allowable by law based upon the position that payment of the $53,382.77 was a nontaxable return of previously taxed contributions and that the 10 percent penalty was not applicable. The IRS denied this refund claim in a letter dated September 19, 1988. Thereafter, plaintiffs initiated this suit.

## Contentions of the Parties

The parties agree that plaintiffs are entitled to recover all of Mr. Shimota's previously taxed contributions to the CSRS tax-free. Their disagreement is over the timing of plaintiffs' tax-free recovery of these contributions. Plaintiffs contend that the payment of $53,382.77 was a "lump-sum credit" and a nontaxable return of capital. Thus, if this position is correct, all annuity payments received thereafter are fully taxable.

Plaintiffs claim their position is supported by "a fundamental principle" of federal income taxation that an individual is taxed only on accretions to wealth and not on a return of capital. They rely upon *United States v. Safety Car Heating & Lighting Co.*, 297 U.S. 88, 98, 56 S.Ct. 353, 358, 80 L.Ed. 500 (1936); *Burnet v. Logan*, 283 U.S. 404, 413, 51 S.Ct. 550, 552, 75 L.Ed. 1143 (1931); *Commissioner v. Meyer*, 139 F.2d 256, 259 (6th Cir.1943); and Treasury Regulation § 1.72–1(a). Treasury Regulation § 1.72–1(a) states:

> In general, these rules provide that amounts subject to section 72 are includable in the gross income of the recipient *except to the extent they are considered to represent a reduction or return of premiums or other considerations paid.* (Emphasis added.)

Thus, plaintiffs maintain that if the payment is determined to be a return of their contributions to the CSRS, the tax result is that the lump-sum distribution is a tax-free return of capital.

Plaintiffs contend that the court should focus on the statutory definition of the term "lump-sum credit," which is not defined in the IRC, to determine the nature of the payment. That definition, as found in 5 U.S.C. § 8331(8), is "the unrefunded amount consisting of[:]"

> (i) retirement deductions made from the basic pay of an employee or Member;

> (ii) amounts deposited by an employee or Member covering earlier service, including any amounts deposited under section 8334(j) of this title; and

> (iii) interest on the deductions and deposits at 4 percent a year to December 31, 1947, and 3 percent a year thereafter compounded annually to December 31, 1956, or in the case of an employee or Member separated or transferred to a position in which he does not continue subject to this subchapter before he has completed 5 years of civilian service, to the date of separation or transfer....

Subparagraphs (i) and (ii) obviously include only the employee's after-tax contributions.

Plaintiffs note that the OPM specifically advised plaintiff that "You will also receive a refund of all of your retirement contributions." Plaintiffs further point out that their lump-sum distribution for income tax purposes was $53,382.77, that this amount consisted entirely of after-tax contributions to the Fund, that the IRS has no authority unilaterally to "recharacterize" the applicable statutory definition found in the CSRS, and that historically the definition of "lump-sum credit" has remained consistent since Pub.L. 89–554 was passed in 1966 amending 5 U.S.C. § 8331(8). Also plaintiffs argue that in 1986, in establishing the Federal Employees Retirement System (FERS), Congress left this definition intact expressing its intent to approve this tax free treatment. Further, they state that the IRS' rulings (prior to 1986) have consistently held that the lump-sum credit is nontaxable to the extent of the taxpayer's contribution.

Next, plaintiffs argue that 5 U.S.C. § 8343a(b)(1), in using the word "and" in specification of the option to elect a lump-sum credit *"and* payment of an annuity," (emphasis added) signifies a Congressional intent to separate the payment from the

reduced annuity.[7] Therefore, plaintiffs conclude that the use of this conjunctive in the statute, along with the applicable OPM regulations, 5 C.F.R. § 831.2204—which provide that an eligible employee "may elect to receive the lump-sum credit *plus* an annuity" (emphasis added)—and the FERS Committee print prepared by the Congressional Research Service which discusses the nature of the property rights conferred on CSRS participants in a manner indicating a difference in the treatment to be accorded the payment and the annuity, means the lump-sum credit is "not received under an annuity, but in addition to it."

Further, plaintiffs contend that even if the payment was received "as an annuity" it was *noncontractual* in nature based upon the FERS Committee Print's description, page 95, of the nature of the pension, a statement in the Print that contractual annuity principles do not apply, and the Print's references to various cases supporting this view. Thus, plaintiffs conclude that since § 72(e) only applies to contractual annuities, the lump-sum distribution is not subject to that provision.

Plaintiffs dispute defendant's position that Treasury Regulation § 1.72–11(f) applies. Plaintiffs argue that since the payment in dispute is not received under an annuity contract, that Regulation is inapplicable since it only applies to "commercial annuity contracts," and it has never been cited as the basis for "any position." However, plaintiffs argue that even if IRS Reg. § 1.72–11(f) is applicable, it cannot be used to redefine the statutory definition of the term "lump-sum credit," since this would be a nullity under the holding in *Manhattan General Equipment Co. v. Commissioner,* 297 U.S. 129, 134, 56 S.Ct. 397, 399, 80 L.Ed. 528 (1936).

Plaintiffs argue further that defendant fails to consider the historical differences between private and government plans. Plaintiffs contend that Congress has recognized the distinction between the CSRS and a private sector qualified plan and that courts have long recognized consistently that the CSRS is not contractual. Plaintiffs state that the legislative history of 5 U.S.C. § 8343a supports their construction of the non-taxability of the lump-sum credit. In their reply brief, they contend that an affidavit of James Cowen relating to the passage of the Tax Reform Act of 1986 shows that, in including 5 U.S.C. § 8343a as a part of FERS, Congress intended to make the lump-sum distribution tax free.

Also, plaintiffs contend that the penalty prescribed by § 72(t), which was enacted as a part of the Tax Reform Act of 1986, is inapplicable because the payment is a nontaxable return of capital. But, if it is determined that the payment is taxable, plaintiffs argue that since § 72(t), coupled with § 4974(c),[8] was meant to apply only to tax favored retirement arrangements, and since the CSRS is not such an arrangement, § 72(t) does not apply. Further, plaintiffs contend application of the § 72(t) "penalty" to the CSRS lump-sum payment is improper because the CSRS is not a "qualified plan" as described in § 401(a), a position they urge is supported by the legislative history of the Employee Retirement Income Security Act of 1974 (ERISA) and FERS as reported in H.Rep. No. 93–533, H.Rep. No. 807, and S.Rep. No. 166.

Defendant contends § 402(a) governs the taxability of the lump-sum distribution to plaintiff and requires that it be taxed under § 72. § 402(a) provides, in part:

SEC. 402. *TAXABILITY OF BENEFICIARY OF EMPLOYEES' TRUST.*

(a) *Taxability of Beneficiary of Exempt Trust.—*

---

7. 5 U.S.C. § 8343a(b)(1) provides as follows: an alternative which provides for—
(A) payment of the lump-sum credit to the employee or Member; and
(B) payment of an annuity to the employee or Member for life;

  .    .    .    .    .

8. § 4974(c) defines a "qualified retirement plan" to include "... a plan described in Code

§ 401(a) which includes a trust exempt from tax under Code § 501(a)." § 4974(c) was also added to the Code by the Tax Reform Act of 1986.

(1) *General rule.*—Except as provided in paragraph (4)[9], the amount actually distributed to any distributee by any employees' trust described in section 401(a) which is exempt from tax under section 501(a) shall be taxable to him, in the year in which so distributed, under section 72 (relating to annuities).

Defendant's argument is that because § 402(a) does not distinguish between distributions that are income and those that are return of capital, although there was such a distinction made prior to the 1942 amendments to the Code,[10] the rules governing annuity contracts in § 72 apply to the plaintiff's distribution. Defendant argues that in enacting § 165(b), Congress intended that the retiree be taxed upon the amount received by him to the same extent as he would be taxed upon an annuity purchased by him. Defendant contends that this treatment has been continued in the 1954 and 1986 amendments to the Code.

Defendant further contends that since 1952, the Fund has been consistently ruled to be a qualified "employees' trust described in § 401(a)" and therefore exempt from income tax under § 501(a). Thus, Congressional acquiescence can be imputed to the IRS' position that the Fund is a qualified trust because since 1952 applicable Treasury Regulations have been amended at least 16 times, § 72 has been amended at least 17 times, and there has

been no change in the interpretation of § 401(a).

Defendant also argues that, even if the Fund is not an employees' trust described in § 401(a), the payment to plaintiff is taxable under § 402(b). Section 402(b) provides, in pertinent part:

(a) *Taxability of beneficiary of non-exempt trust.*—

(1) *In general.*—Contributions to an employees' trust made by an employer during a taxable year ... for which the trust is not exempt from tax under § 501(a) ... shall be taxable to him [employee] in the year in which so distributed or made available, under section 72....

Defendant contends that since both exempt and non-exempt trust distributions are taxed under § 72, it is immaterial whether the distribution is classified as exempt or non-exempt.[11]

Defendant asserts that § 72, which deals with payments received as annuities, generally provides that such payments will be treated as both the receipt of income and the return of "an aliquot portion" of the premium paid for it. Thus, under § 72, plaintiff can only exclude 4.1 percent of the monthly annuity payments he received from the Fund.[12]

Defendant contends that under § 72(e)(1) plaintiffs' lump-sum payment is an amount "not received as an annuity" and since it was "received on or after the annuity start-

**9.** In 1988, a technical correction to Section 402(a)(1) removed a reference to former Section 402(a)(2). See § 1011A(b)(8)(A), Technical and Miscellaneous Revenue Act of 1988, Pub.L. No. 100–647, 102 Stat. 3342. Section 402(a)(2) was repealed by the Tax Reform Act of 1986.

**10.** Under the 1939 Code § 165(b) which had its origin in the 1921 Code § 219(f), distributions from the Fund were taxable to the retiree only after the amount received exceeded the retiree's contributions to the Fund. The 1942 Code § 162 changed the treatment of these distributions so that § 165(b) of the 1939 Code, as amended, provided that distributions from qualified pension plans would be taxed under the same provisions applicable to annuity contracts.

**11.** Employer contributions to a non-exempt trust are includable in the gross income of the beneficiary in the year in which such contribu-

tions are made in accordance with § 83 of the 1986 Code. An employing agency's contributions to the CSRS Fund are not taxable to an employee until they are received. Defendant contends this indicates that the Fund is actually exempt from tax under § 401(a).

**12.** See § 72(a), (b), and (c). The entire annuity payment is included in gross income and then the proportion of each annuity payment which the annuitant's investment in the annuity contract bears to his total expected return therefrom is excluded from income. The computation required for calculating the annual exclusion from income is as follows:

$$\frac{\text{Consideration for contract}}{\text{Total expected return}} \times \text{Annuity}$$

This amount is subtracted from the annuity payment to arrive at the portion remaining in income.

ing date," [13] § 72(e)(2)(A) requires that it be included in gross income.[14] Therefore, since § 72(e) covers all amounts not received as an annuity, it is also immaterial as to how the annuity contract characterizes a lump-sum payment whether as a dividend or a return of premium. Thus, whatever the characterization, the exclusion ratio of 4.1 percent, representing the annuitant's investment, needs no recalculation but remains the same.[15] Defendant contends that the lump-sum payment was received "after the annuity starting date" because plaintiff received his first distribution from the Fund on April 1, 1987 and his lump-sum payment on August 3, 1987. Moreover, defendant argues under the holding in *Price v. United States*, 459 F.Supp. 362, 365 (D.Md.1978), § 72(e) governs and the payment (subject to the exclusion) is taxable in the year it was received by plaintiff as ordinary income.

Defendant next disputes plaintiffs' position that the lump-sum payment and the annuity payments are "separate and distinct" on the ground that that position is unsupported by tax law and the CSRS statute. It argues that Regulation §§ 1.72–2(a)(3)(i) and (ii) make it clear that the two forms of distribution are interrelated benefits received under the same annuity contract for purposes of § 72—first, because Congress defined the lump-sum option as an "alternative form of annuity" and included both forms in their establishment by 5 U.S.C. § 8343a(c) and, second, because the OPM under 5 C.F.R. § 831.2205 calculates the annuity to be received under 5 U.S.C. § 8343a by treating the lump-sum payment as an accelerated distribution of annuity payments.

Defendant next argues that while the IRS has changed its position regarding the taxability of the lump-sum credit, it has always maintained that distributions from the Fund are taxable under § 72. Further, Defendant argues that there is a significant difference between the tax treatment of the lump-sum credit received under 5 U.S.C. § 8342 and the lump-sum distribution to plaintiffs under 5 U.S.C. § 8343a stemming from the fact that receipt of the lump-sum credit fully discharges all annuity rights while receipt of the lump-sum payment does not.[16] Taxability of the lump sum payment is not governed by § 72(e)(5) but by § 72(e)(2).

Defendant argues that although under § 72(d), which existed prior to 1986, the three annual lump-sum payments described in § 72(d) to employees were not includable in the employee's gross income, the repeal by Congress of § 72(d) with the passage of the Tax Reform Act of 1986 removed this favorable treatment accorded such payments because of the inequity it represented to annuitants.[17] Further, defendant states that even if plaintiffs are correct in asserting that plaintiff's lump-sum payment is described as a "refund" under the CSRS statute, simply the "characterization" of the benefit as a "refund" in that statute is not controlling for tax purposes, since the CSRS statute is not a tax statute.

Finally, defendant contends plaintiffs are liable for the 10 percent additional tax imposed by § 72(t) because § 72(t)(1) applies the additional tax to *any* amounts received from a "qualified retirement plan" which, because the Secretary has ruled that the Fund is such a plan described in § 401(a), covers distributions from the Fund.[18]

---

**13.** The "annuity starting date" is the "first day of the first period for which an amount is received as an annuity under the contract." § 72(c)(4), Code 1986.

**14.** The specific amount to be included in plaintiffs' gross income is not at issue.

**15.** § 72(a) and (b).

**16.** Receipt of the lump-sum credit permits the employee to only include in gross income the difference, if any, between the amount received and the amount invested. That difference might be interest payable to employees who

have not been employed for more than five years. § 72(e)(5); 5 C.F.R. § 831.105(b)(3).

**17.** S.Rep. No. 313, 99th Cong.2d Sess. 609 *reprinted in*, 1986–3 C.B. (Vol. 3) at 609.

**18.** Although there are six exceptions to application of the 10 percent additional tax which are set forth in § 72(t)(2), plaintiffs do not argue that any of these apply to them. Plaintiffs' argument is simply that § 72(t) is inapplicable because the CSRS is not a qualified retirement plan "and that § 72(t) does not apply to CSRS participants."

Moreover, defendant asserts Congress specifically excluded from the additional tax amounts received from state and local government pension plans thereby suggesting that had Congress wished to exclude application of § 72(t) to CSRS participants it could have easily done so in a similar fashion—i.e., by the addition of another exclusion in § 72(t)(2).

### Standard of Review

Summary judgment is appropriate if there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. RUSCC 56. Judgment is entered on cross-motions for summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In this case, the court agrees with the parties that there are no genuine issues of material fact in dispute and that this case is appropriate for resolution by summary judgment.

### DISCUSSION

■■■ Plaintiffs seek an exemption from a tax which the Commissioner of the IRS has imposed.[19] It is axiomatic that exemptions from taxation [are not] granted by implication. *Harding Hospital, Inc. v. United States*, 505 F.2d 1068, 1071 (6th Cir.1974); *see Founding Church of Scientology v. United States*, 188 Ct.Cl. 490, 412 F.2d 1197 (1969); *Puritan Lawn Memorial Park Cemetery v. United States*, 15 Cl.Ct. 234 (1988). To be sure, a statute creating an income tax exemption must be strictly construed with any doubts to be resolved in

favor of the taxing entity. *Harding Hospital, Inc. v. United States*, 505 F.2d 1068, 1071 (6th Cir.1974). Furthermore, determinations of the Commissioner are presumptively correct. *Welch v. Helvering*, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933); *Morowitz v. United States*, 15 Cl.Ct. 621, 629 (1988). Plaintiff bears the burden of producing "substantial evidence" as to the wrongfulness of the Commissioner's decision. *KFOX, Inc. v. United States*, 206 Ct.Cl. 143, 151, 510 F.2d 1365 (1975). With these principals in mind, the court will now turn to an analysis of the specific issues in this case.

■■■ After a careful analysis of the parties' arguments and a review of the applicable statutes and regulations at issue, the court finds that the lump sum distribution to plaintiff under 5 U.S.C. § 8343a is taxed under IRC § 402 and IRC § 72. Section 402(a) of the IRC clearly states that "the amount actually distributed to any distributee by any employees' trust described in Section 401(a) which is exempt from tax under Section 501(a) *shall* be taxable to him, in the year in which so distributed, under section 72 (relating to annuities)." (Emphasis added.) The court finds that these statutes convey a plain meaning and are not ambiguous.

While the court makes its holding under the plain meaning rule of statutory construction, the court's conclusion is supported by the predecessor to § 402(a) which was § 165(b) of the IRC of 1939 which had its beginnings in § 219(f) of the Internal Revenue Act of 1921.[20] Under the old section 219(f), distributions to the distributee were taxed only after the full amount of the distributee's contributions were distributed to him. However, this tax treatment was changed when § 165(b) of the IRC of

---

**19.** Plaintiffs argue that the general rule that returns of capital are tax free should apply. However, this opinion demonstrates that the IRC has specifically provided that the lump sum payment shall be taxed under IRC § 72.

**20.** Old section 219(f) provided:
(f) A trust created by an employer as a part of a stock bonus or profit-sharing plan for the exclusive benefit of some or all of his employees, to which contributions are made by such

employer, or employees, or both for the purpose of distributing to such employees the earnings and principal of the fund accumulated by the trust in accordance with such plan, shall not be taxable under this section, but the amount actually distributed or made available to any distributee shall be taxable to him in the year in which so distributed or made available to the extent that it exceeds the amounts paid in by him.

1939 was enacted,[21] so that distributions from qualified pension plans were taxed the same as annuity contracts. Furthermore, contrary to plaintiffs' argument that the lump sum distribution is a tax free return of capital, § 402(a) of the IRC of 1954 does not distinguish between distributions that are income and distributions which are allegedly a return of capital; it simply directs that distributions shall be taxed under § 72.

■ However, the Fund is an employees' trust described in § 401(a) of the IRC. This is evident from the specific exception identified in § 402(a)(1) and the legislative history of § 402(a).[22] The first clause of § 402(a)(1) states "[e]xcept as provided in paragraph (4), ..." Section 402(a)(4) provides:

> (4) *Distributions by United States to nonresident aliens.*—The amount includible under paragraph (1) of this subsection in the gross income of a nonresident alien individual with respect to a distribution made by the United States in respect of services performed by an employee of the United States shall not exceed an amount which bears the same ratio to the amount includible in gross income without regard to this paragraph as—
> (A) the aggregate basic pay paid by the United States to such employee for such services, reduced by the amount of such basic pay which was not includ-

ible in gross income by reason of being from sources without the United States, bears to
> (B) the aggregate basic pay paid by the United States to such employee for such services.

In the case of distributions under the civil service retirement laws, the term "basic pay" shall have the meaning provided in section 8331(3) of Title 5, United States Code.

■ This special rule for the taxation of distributions from the Fund to nonresident aliens would be superfluous if the Fund were not an employees' trust described in § 401(a). A statute should never be read so as to render certain provisions superfluous. *Woodfork v. Marine Cooks & Stewards Union,* 642 F.2d 966 (5th Cir.1981). Moreover, defendant correctly cites the legislative history of § 402(a)(4) for the proposition that "[u]nder present law civil service annuities and certain other retirement benefits provided by the United States *are treated as distributed under 'qualified' pension plans,* and when distributions are made to the annuitant he is not taxed on the portion of the payment representing his own contributions to the pension." S.Rep. No. 1028, 86th Cong., 2d Sess. 1, *reprinted in,* 1960–1 C.B. 822, U.S.Code Cong. & Admin.News 1960, pp. 1902, 1903. As a qualified employees' trust, the Fund does not need to meet all of the requirements that

---

**21.** Section 165(b) provided:
(b) *Taxability of Beneficiary.*—The amount actually distributed or made available to any distributee by any such trust shall be taxable to him, in the year in which so distributed or made available, under section 22(b)(2) as if it were an annuity the consideration for which is the amount contributed by the employee, except that if the total distributions payable with respect to any employee are paid to the distributee on account of the employee's separation from the service, the amount of such distribution to the extent exceeding the amount contributed by the employee, shall be considered a gain from the sale or exchange of a capital asset held for more than 6 months.
As defendant correctly points out in its cross-motion for summary judgment, section 22(b)(2) of the IRC of 1939 requires that distributees include in gross income annuity payments to

the extent of 3% of the amount contributed for the annuity. Distributions beyond that amount were deemed a return of capital and were not taxed until the total amount exceeded the investment in the plan.

**22.** The court finds that the statutes at issue convey plain meaning, and therefore, resort to legislative history is unnecessary. *Ocean Drilling & Exploration Co. v. United States,* 220 Ct.Cl. 395, 600 F.2d 1343 (1979); *J.H. Miles & Co. v. United States,* 3 Cl.Ct. 10 (1983). Of course, merely because the statutes have plain meaning does not preclude an analysis of legislative history. *Ocean Drilling & Exploration Co. v. United States,* 220 Ct.Cl. 395, 600 F.2d 1343 (1979). The purpose of examining the legislative history in this opinion is to show that, even if the statutes are viewed as ambiguous, the court's conclusions are nevertheless supported by the legislative history.

private plans must meet, but they are to be *treated* as if they do. The reason that governmental·plans do not have to comply with all of the restrictions applicable to private plans is that governments are not subject to taxation and, therefore, do not require similar controls. Thus, the beneficiaries of governmental plans are to be treated the same as private plan beneficiaries whose distributions are taxable under § 402(a).

▮ Regulation § 1.72–2(a)(3)(iii) expressly states that "Section 72 shall be applied to distributions received under the Civil Service Retirement Act." Section 72 has been amended at least 17 times since its enactment without change. Under these circumstances, the court is persuaded that Congress has acquiesced in the IRS' interpretation respecting the nature of the Fund. *Helvering v. Winmill*, 305 U.S. 79, 83, 59 S.Ct. 45, 46, 83 L.Ed. 52 (1938); *United States v. Correll*, 389 U.S. 299, 305–06, 88 S.Ct. 445, 448–49, 19 L.Ed.2d 537 (1967); *First Nat. Bank v. United States*, 214 Ct.Cl. 585, 593, 557 F.2d 1379 (1977). The court finds that the Fund is a qualified trust described in § 401(a) of the Code which is exempt from tax under § 501(a) of the Code, and that distributions from the Fund including lump-sum distributions are taxable under §§ 402(a) and 72 of the Code.[23]

▮ Although plaintiffs charge that since passage of the Tax Reform Act of 1986 defendant has failed to issue definitive regulations specifying that the Fund is a qualified plan described in § 401(a), this fact is not sufficient to prove plaintiffs' contention that the Fund is not a qualified plan under that section. Since 1921, the IRS has held that distributions from the Fund are taxable under § 402(a), or its predecessor code sections, and since 1952, the IRS has held that the Fund is a qualified trust under § 401(a) and exempt from

the income tax under § 501(a).[24] This interpretation has been incorporated in the Regulations since 1960 and although amended at least 16 times since their promulgation, no change has been made in this consistent interpretation.[25]

▮ Even if the Fund is not an employees' trust described in § 401(a) and therefore § 402(a) does not apply, § 402(b) would require that the lump sum distribution be taxed under § 72. Section 402(b) provides:

(b) *Taxability of beneficiary of non-exempt trust.—*

(1) *In general.—*

Contributions to an employees' trust made by an employer during a taxable year of the employer which ends within or with a taxable year of the trust from which the trust is not exempt from tax under section 501(a) shall be included in the gross income of the employee in accordance with section 83 (relating to property transferred in connection with performance of services), except that the value of the employees' interest in the trust shall be substituted for the fair market value of the property for purposes of applying such section. *The amount actually distributed or made available to any distributee by any such trust shall be taxable to him in the year in which so distributed or made available, under section 72 (relating to annuities),* except that distributions of income of such trust before the annuity starting date (as defined in section 72(c)(4)) shall be included in the gross income of the employee without regard to section 72(e)(5) (relating to amount not received as annuities). (Emphasis added.)

This section clearly mandates that the amount distributed to any distributee "by *any such trust shall* be taxable ... under

---

**23.** The tax treatment of the "lump-sum credit" as defined in the CSRS is uncontested.

**24.** *See* T.D. 3112, 4 C.B. 76; *see* Rev.Rul. 74–136, 1974–1 C.B. 29; Rev.Rul. 68–486, 1968–2 C.B. 184; Rev.Rul. 58–472, 1958–2 C.B. 30, 32; I.T. 4102, 1952–2 C.B. 173.

**25.** *See* Treas.Reg. §§ 1.72–2(a)(3)(iii), 1.72–2(a)(3)(iv) Ex. 4, Treasury Regulations on Income Tax (26 C.F.R.); T.D. 6497, 1960–2 C.B. 19.

section 72 (relating to annuities)." (Emphasis added.) Therefore, even if the Fund is not an employees' trust described in § 401(a), the distribution at issue in this case because of § 402(b) would be taxed under § 72.

As a result, the lump sum distribution made to plaintiff is taxable under § 72 of the IRC.[26] Section 72 provides for the taxation of any amounts received under annuity contracts. These same rules apply to Fund distributions pursuant to § 402(a). There is no dispute about the annuity portion of plaintiff's distribution. It is taxed under §§ 72(a), (b) and (c) which provide that each annuity payment will be treated as both the receipt of income and the return of an "aliquot" portion of the premium paid for it. *Garvey, Inc. v. United States*, 1 Cl.Ct. 108, 125 (1983), *aff'd*, 726 F.2d 1569 (Fed.Cir.), *cert. denied*, 469 U.S. 823, 105 S.Ct. 99, 83 L.Ed.2d 44 (1984).[27]

■ Section 72 provides for the taxation of amounts "not received as an annuity" under annuity contracts.[28] If an amount is received on or after the starting date of the annuity which is the first day of the first period for which an amount is received as an annuity, it is includable in gross income. *See* §§ 72(e)(2)(A) and 72(c)(4).

Plaintiffs' contention that § 72(e) does not apply is without merit. In addition to the language in § 402(a)—and alternatively § 402(b)—which establishes that § 72 applies to all distributions from the Fund, courts have consistently held CSRS retirement program payments for income tax purposes are to be treated as amounts received "under an annuity, endowment or life insurance contract." *Miller v. Commissioner*, 144 F.2d 287 (4th Cir.1944); *Heard v. Commissioner*, 40 T.C. 7, 11–13 (1963), *aff'd*, 326 F.2d 962 (8th Cir.), *cert. denied*, 377 U.S. 978, 84 S.Ct. 1884, 12 L.Ed.2d 746 (1964); *Taylor v. Commissioner*, 2 T.C. 267, 271 (1943).

■ The lump-sum payment at issue is an "amount not received as an annuity" because it is received in the form of a one-time payment to which § 72 applies pursuant to § 402(a). See Regulations § 1.72–2(b)(2). Clearly, §§ 72(a) through (c) do not apply because as the Regulations expressly state, those sections only cover amounts which are payable at *regular intervals* over a period of more than one full year from the date on which they are deemed to begin, provided the total of the amounts so payable or the period for which they are to be paid can be determined as of that date.[29] There is no provision in § 72 other than § 72(e) which logically can apply to plaintiffs' lump-sum distribution. The payments covered by § 72(e) includes all amounts "not received as an annuity, including dividends, or payments in the nature of dividends or as a return of premiums. Thus, § 72(e) is an all inclusive "catch all" for all payments that are non-annuity payments, in which event the IRC directs application of § 72.

In *Price v. United States*, 459 F.Supp. 362, 365 (D.Md.1978), the court held that the refund a retired teacher received of her excess contributions to a state retirement fund was taxable as ordinary income. In agreeing with the Government's position

**26.** Regulation § 1.72–2(a)(3)(iii) states that section 72 shall apply to distributions received under the CSRS.

**27.** Pursuant to §§ 72(a) and (b) the entire annuity payment is included in gross income and then the proportion of each annuity payment which the annuitant's investment in the annuity contract bears to the total expected return therefrom is excluded from income. Under explicit rules in these sections, regardless of the characterization of the amount received, plaintiff may only exclude 4.1 percent of the monthly annuity payments he receives from the Fund.

**28.** § 72(e)(1) provides:
(e) *Amounts Not Received as Annuities.—*
(1) *Application of subsection.—*
(A) *In general.—*This subsection shall apply to any amount which—
(i) is received under an annuity, endowment, or life insurance contract, and
(ii) is not received as an annuity,
if no provision of this subtitle (other than this subsection) applies with respect to such amount.

**29.** Thus, the amounts plaintiffs receive as annuities are subject to the capital recovery rules in §§ 72(a) and (b) and require no recalculations of the 4.1 percent exclusion ratio to reflect the lump-sum payment.

that the refund was fully taxable in the year it was received, the court held:

> ... even though the payment to plaintiff ... was the return of excess contributions, it is clearly taxable under § 72(e) and the applicable Treasury Regulations as ordinary income.
>
> *Price v. United States,* 459 F.Supp. 362, 365 (D.Md.1978).

In *Price* the court reasoned that the legislative history of § 72(e) indicated that Congress had adopted the approach in § 72 of permitting the exclusion ratio to remain constant while treating as taxable income "extraordinary payments." *Price v. United States,* 459 F.Supp. 362, 365 (D.Md. 1978). Plaintiff's lump-sum distribution is a similar extraordinary payment and under the *Price* rationale is properly treated as taxable income even though the *Price* case involved a different "Fund." Plaintiff received his first distribution from the CSRS Fund on April 1, 1987 and his lump-sum payment on August 3, 1987 or well after the annuity starting date. This fact supports defendant's contention that the lump-sum payment was not received as an annuity but under an annuity contract and is includable in gross income. While the *Price* case is not controlling authority, it provides persuasive precedent for the proposition that § 72(e) governs the taxation of this lump-sum payment.

Plaintiffs argue that the lump-sum payment is "separate and distinct" from the annuity payments and that the distribution is not received under an "annuity contract." However, the two forms of payment are received under the same annuity contract. § 1.72–2(a)(3)(i) provides in pertinent part:

> (3)(i) Sections 402 and 403 provide that certain distributions by employees' trusts and certain payments under employee plans are taxable under section 72.... For purposes of applying section 72 to such distributions and payments (other than those described in subdivision (iii) of this subparagraph),

each separate program of the employer consisting of interrelated contributions and benefits shall be considered a single contract. Therefore, all distributions or payments (other than those described in subdivision (iii) of this subparagraph) which are attributable to a separate program of interrelated contributions and benefits are considered as received under a single contract.

Further, Section 1.72–2(a)(3)(iii) sets forth the treatment of distributions from employees' trusts other than the Fund. This regulation provides that "Section 72 shall be applied to distributions received under the Civil Service Retirement Act in the manner prescribed in subdivision (i) of this subparagraph."

Further, under 5 U.S.C. § 8343a the interrelated nature of the two forms of benefit is apparent. That section provides that the alternative form of annuity—"including any lump-sum credit"—should be actuarially equal to the annuity that would otherwise be provided. Thus both components of the alternative form of annuity are necessarily interdependent since they must be equivalent to the basic CSRS annuity. Further, OPM Regulations buttress this correlation by treating the 5 U.S.C. § 8343a annuity as an accelerated distribution of annuity payments that would otherwise be paid to the retiree over the expected duration of the CSRS annuity. See 5 C.F.R. § 831.2205.

Moreover, there is a highly significant difference between the tax treatment of the lump-sum distribution made to plaintiffs and the "lump-sum credit." Plaintiffs' lump-sum distribution arises under 5 U.S.C. § 8343a, which permits the continued receipt of an annuity, while the lump-sum credit arises under § 8342, which terminates that right completely.[30] Thus, under 5 U.S.C. § 8342, § 72(e)(5) applies and the employee only includes in gross income the difference between the amount received and the amount invested (which in

---

**30.** § 72(e)(5), which provides that for certain distributions from trusts described in § 401(a), the amount included in gross income is only the amount by which the payment exceeds the investment in the contract. Whether the payment is issued as a refund, surrender, redemption or maturity, it fully discharges all contractual obligations. *See* § 72(e)(5)(E).

the case of the lump-sum credit might be interest on the employee's contribution).[31] However, since there is no full surrender of the annuity under 5 U.S.C. § 8343a—it is only reduced by the actuarial value of the lump-sum payment—§ 72(e)(5) does not apply. Accordingly, the taxability of this lump-sum payment is governed by § 72(e)(2).

██ Plaintiff contends that the use of the language "lump sum credit" *and* payment of an annuity for life indicates Congressional intent to treat the two items as separate and distinct distributions and therefore they do not fall under a single "annuity contract." Plaintiffs contend this argument is supported by the OPM letter to plaintiffs which uses the conjunctive "plus." The court, however, does not agree with that interpretation. 5 U.S.C. § 8343a(b)(1) defines "alternative form of annuity" as "payment of the credit ...; and payment of an annuity to the employee ... for life." This section simply means that the alternative form of annuity is a single package, or single annuity contract for purposes of § 402(a) and § 72, which includes two parts: a lump sum distribution and a reduced annuity for life.[32]

Further, the conclusion that the "alternative form of annuity" is not simply a reduced annuity as plaintiffs contend but consists of both of these payment items, is supported by the clear Congressional intent to design an alternative form of annuity which is actuarially equivalent to the present value of the full annuity which would otherwise be paid. To achieve this goal, of necessity, the lump-sum payment is an integral part of the computation. Finally, as pointed out by defendant, use of the word "form" in the phrase, would be superfluous if the intent was to refer only to the reduced annuity because it is simply an annuity to begin with.

██ In these circumstances, the court concludes that the plain language of § 8343a does not support plaintiffs' position that the lump-sum payment is not part of the "alternative form of annuity." It clearly is an integral part of that annuity which cannot be disregarded in determining the total amount each retiree is due in the aggregate to receive under CSRS.

██ Plaintiffs argue that the general rule is that a return of capital is tax free. However, where Congress, in clear language, has specifically described, as it has in § 72, how and when investments in annuity contracts are to be deemed recovered, that general rule does not apply. *Garvey Inc. v. United States,* 1 Cl.Ct. 108, 124 (1983), *aff'd,* 726 F.2d 1569 (Fed.Cir.), *cert. denied,* 469 U.S. 823, 105 S.Ct. 99, 83 L.Ed.2d 44 (1984). Rather, the general rule that the courts are to give statutes their plain meaning applies. *Ocean Drilling & Exploration Co. v. United States,* 220 Ct.Cl. 395, 600 F.2d 1343 (1979). To hold in accordance with the plaintiffs' contention that the lump-sum payment is simply a return of capital would require the court to totally ignore the provisions of §§ 402(a) and 72 which together establish a comprehensive and logical scheme for taxation of all distributions from the Fund. This court, however, cannot ignore §§ 402(a) and 72 or carve out an exception for plaintiffs' benefit.

██ The nature of the Fund is that it is an employee's trust and not a contract. Since this is so, § 402 provides that distributions therefrom are taxed *in the same manner* as annuity contracts, regardless of whether the distributions are classed as income or return of capital. Furthermore, the trust is an exempt trust described in § 401(a) which is exempt from tax under § 501(a), but it makes no different whether

---

**31.** Under OPM regulations, an employee electing the lump-sum credit under 5 U.S.C. § 8342 who has not been employed for more than five years is entitled to interest on his contributions to the Fund. 5 C.F.R. § 831.105(b)(3).

**32.** Plaintiffs' analysis of 5 U.S.C. § 8343a(b)(1) is flawed. In arguing that the lump-sum payment is not part of the "alternative form of annuity" defined in that section and therefore its taxation is not governed by § 72, plaintiff has misread the plain language of the section. 5 U.S.C. § 8343a(b)(1) defines the "alternative form of annuity" as two payment items—the lump-sum credit *plus* the annuity—and not just the annuity alone.

the trust is classed as an exempt trust or non-exempt trust. In either case the lump-sum payment is taxable under §§ 72 and 402(a) or 402(b). There is no clear exception in the statutes which would exempt the lump-sum payment from taxation under those IRS code sections. Whether or not the annuitant actually recoups his entire investment is immaterial. *Garvey Inc. v. United States,* 1 Cl.Ct. 108, 123 (1983), *aff'd,* 726 F.2d 1569 (Fed.Cir.), *cert. denied,* 469 U.S. 823, 105 S.Ct. 99, 83 L.Ed.2d 44 (1984). Section 72 makes it clear that Congress favored predictability of tax liability over precision in determining gain.

Section 72(e)(5)(E) defines a return of capital as payment that is in full discharge of an obligation to pay an annuity. But under the lump-sum option exercised by plaintiff, his right to an annuity is not discharged. To characterize the payment as a return of capital is inaccurate. Moreover, such characterization cannot displace the application of §§ 72 and 402 to the lump-sum payment. As previously noted, the lump-sum payment is treated as an accelerated payment of amounts that would otherwise be distributed to the retiree over the expected duration of the CSRS annuity. 5 U.S.C. § 8343a(c) and 5 C.F.R. § 831.2205(a).

Finally, the repeal by Congress of § 72(d) helps to illuminate Congressional intent with respect to the tax treatment to be accorded the lump-sum payment. Section 72(d), which allowed employees to exclude from gross income their entire investment in retirement annuities during the first three years of the annuity was repealed by the 99th Congress shortly after it created the lump-sum payment option in the Federal Employees' Retirement System Act of 1986 because "[t]he three-year basis recovery rule provides favorable tax treatment to a limited class of taxpayers, which is inequitable to other taxpayers." S.Rep. No. 313, 99th Cong.2d Sess. 609, *reprinted in,* 1986–3 C.B. (Vol. 3) at 609.

This court cannot accept that the same Congress which repealed the tax favored treatment given to certain employees under § 72(d) because of its concern with the inequality inherent in the *three* year recovery statute as to other annuitants, could have intended to create a mechanism whereby civil servants could exclude from gross income their entire investment in the Fund in the *first* year of the annuity. Moreover, there is no express statutory direction from Congress similar to that applicable to distributions to non-resident aliens. *See* § 402(a)(4). The absence of such a direction supports defendant's argument that Congress did not intend to provide a tax favored haven for plaintiff or other retirees in his status in creating the lump-sum option in the 1986 Act.

█ In summary, the court does not view the lump-sum payment plaintiff received as simply a "refund" of plaintiff's contributions under the CSRS statute as plaintiffs contend, but as an accelerated distribution of amounts that would otherwise be paid as part of an annuity payment under a rather comprehensive and integrated system which prefers no one group of annuitants over others.[33] Furthermore, there can be no serious question that if plaintiff had received the lump-sum payment from a private employer whether from a qualified or a non-qualified plan, § 72 would have been applicable and controlling over the language of the benefit statutes in Title 5.

█ In their reply filed February 2, 1990, plaintiffs included the affidavit of James Cowen, who states he served as Minority Special and Chief Counsel to the Subcommittee on Civil Service, Post Office and General Services Committee on Governmental Affairs, U.S. Senate, (subcommittee) from April, 1978 to June, 1986, to support their contention that the 1986 FERS legislation intended that the lump-sum distribution would not be taxable. Mr. Cowen alleges that the unpdated memorandum that he wrote to Senator Ted Stevens

---

**33.** The terminology used in the CSRS in describing the benefit as a "refund" is not necessarily controlling particularly since the CSRS is not a taxing statute. *See, e.g., Aetna Life Insurance Co. v. United States,* 16 Cl.Ct. 364, 374 (1989).

(R.Alaska), a copy of which was attached to his affidavit, was actually written in early 1986 when the Tax Reform Act of 1986 was being considered on the Senate floor and that its purpose was to avoid the tax proration that would accrue under the provisions of pending legislation. According to Mr. Cowen pursuant to Senator Stevens instructions he discussed the matter with Representative Ford to whom he attributes the "brilliant" idea of the proposed tax change in order to make the entire lump-sum distribution non-taxable. His memorandum in the pertinent paragraph concludes by stating that "We planned to keep this quiet until passage because of the fear of the tax committee blocking us."

Defendant contends that Mr. Cowen's affidavit is entitled to no weight. We agree. First, as previously discussed, § 402 is not ambiguous. On its face it is all encompassing and directs that the lump-sum distribution is taxable under § 72 of the IRC. Therefore the court need not resort to legislative history in an effort to determine the meaning of § 402. Second, the memorandum relates to 5 U.S.C. § 8343a and not to § 402. There is no language in § 8343a which specifically provides for the taxation of the lump-sum payment. The memorandum shows that apparently Senator Stevens after reading the memorandum wrote "see me" in response. There is no indication, however, that Senator Stevens or any other Congressman agreed with the thoughts expressed in the memorandum. Even if Mr. Cowen's statements are accurate, this court has determined to give them no weight. *Selman v. United States,* 204 Ct.Cl. 675, 685 n. 6, 498 F.2d 1354

(1974); *National School of Aeronautics, Inc. v. United States,* 135 Ct.Cl. 343, 351, 142 F.Supp. 933 (1956). Even if Senator Stevens and Representative Ford had submitted affidavits similar to Mr. Cowen's affidavit in support of plaintiff's position respecting their interpretation of the relevant statutory provisions, we would not be required to accord them any weight. *Selman v. United States,* 204 Ct.Cl. 675, 685 n. 6, 498 F.2d 1354 (1974); *National School of Aeronautics, Inc. v. United States,* 135 Ct.Cl. 343, 351, 142 F.Supp. 933 (1956).[34]

In these circumstances the court finds that plaintiffs have failed to show a Congressional intent to provide an exception to the unambiguous rule set forth in § 402.[35] *See Lutheran Mutual Life Ins. Co. v. United States,* 221 Ct.Cl. 77, 82, 602 F.2d 328 (1979), *cert. denied,* 446 U.S. 936, 100 S.Ct. 2154, 64 L.Ed.2d 789 (1980). *Hart v. United States,* 218 Ct.Cl. 212, 222, 585 F.2d 1025 (1978); *Aparacor, Inc. v. United States,* 215 Ct.Cl. 596, 605, 571 F.2d 552 (1978).

*The Additional Tax Imposed by § 72(t)*

■ Section 72(t)(1) provides for a 10 percent additional tax to any amounts received from a "qualified retirement plan." Section 72(t)(1) provides:

> (t) *10–Percent Additional Tax on Early Distributions From Qualified Retirement Plans.—*
>
> (1) *Imposition of additional tax.—*If any taxpayer receives any amount from a qualified retirement plan (as defined in Section 4974(c)), the taxpay-

---

**34.** An additional reason exists, however, for giving little or no weight to Mr. Cowen's affidavit. It appears from the face of the attached memorandum that Mr. Cowen's views, even if shared by Senator Stevens and Representative Ford, were not widely disseminated among other members of Congress, but kept secret to avoid controversy over the change being proposed. In other words, it is apparent from the memorandum that it was feared that if Congress had fully understood that an attempt was being made to maintain the purported tax exempt treatment for the lump-sum distribution the legislation could have encountered tax committee opposition. This would impliedly indicate that the tax committee in Congress, at least if ad-

vised of the secret strategy, might have been much opposed to a tax free distribution of the lump-sum payment particularly in view of the immediate negative effect upon much needed tax revenues. Perhaps this secret strategy partially accounts for the fact that the Cowen Memorandum was never made part of the official legislative history of either the Tax Reform Act of 1986 or the Federal Employees' Retirement Act of 1986.

**35.** The comments in the Cowen Memorandum also relate to enactment of 5 U.S.C. § 8343a, which is not a taxing statute.

er's tax under this chapter for the taxable year in which such amount is received shall be increased by an amount equal to 10 percent of the portion of such amount which is includible in *gross income.*

That term, as defined in § 4974(c)(1), is a "plan described in § 401(a) which includes a trust exempt from tax under § 501(a)" and a "plan" which the Secretary at any time has determined to be such a plan. As previously noted, the IRS has since 1952 ruled that the Fund is a qualified trust under § 401(a) of the Code and exempt from income tax under § 501(a). See Rev. Rul. 74–136, 1974–1 C.B. 29; Rev. Rul. 68–486, 1968–2 C.B. 184; Rev. Rule 58–472, 1958–2 C.B. 30, 32; I.T. 4102, 1952–2 C.B. 173. This interpretation has been incorporated into the applicable Treasury Regulations. Furthermore, the court's prior analysis has shown that the Fund is a "qualified plan" described in § 401(a).[36]

Section 72(t)(2) provides six detailed exceptions to application of the additional tax. None of these exceptions applies to the case *sub judice.* The court is persuaded that under the doctrine of *expressio unius est exclusio alterius,* the absence of any additional exception from § 72(t)(2) is persuasive evidence that Congress did not intend to permit early lump-sum distributions from the Fund to escape the additional tax. *National Maritime Union v. United States,* 231 Ct.Cl. 59, 72, 682 F.2d 944 (1982). Congress could easily have included with these six exceptions in § 72(t)(2) another exception to application of the additional tax, had it meant for early lump-sum distributions from the Fund to escape the additional 10 percent tax. The fact that

the computation of the alternative form of annuity is executed as if the lump-sum distribution was an early distribution of annuity payments which would otherwise be due supports the conclusion that the payment at issue is such an "early" distribution.

Further, § 72(t)(1) refers to a "qualified retirement plan (as defined in section 4974(c))." This specific reference in § 72(t)(1) strongly suggests that Congress wished to except from the added tax amounts received from state and local government pension plans.[37] This conclusion is also supported by the legislative history of § 72(t)(1) which referred to non-application of the tax to amounts distributed from unfunded deferred compensation plans of tax exempt or State or local government employees (§ 457 plans).[38]

Notwithstanding the fact that the Fund is a plan described in § 401(a), further support for the position that § 72(t) applies is found in the language of § 4974(c)(1) which refers to "any plan, contract, account, or annuity, which, at any time, has been determined by the Secretary to be such a plan, contract, account, or annuity." As defendant correctly points out, Treasury Regulations §§ 1.72–2(a)(3)(iii) and 1.72–2(a)(3)(iv) hold that § 72 shall be applied to distributions received under the CSRS.

## CONCLUSION

For the reasons stated in this opinion, the court finds that plaintiffs have failed to meet their burden of showing through substantial evidence that the Commissioner's assessment of the tax and penalty was erroneous. Thus, the court finds that the

---

**36.** Plaintiffs contend that the Fund is not a qualified plan described in IRC § 401(a). Plaintiffs rely principally upon the changes implemented by ERISA and an analysis of Code Subchapter D as a whole. The court is unconvinced by plaintiffs' arguments on this issue, and for the reasons stated in this opinion, will hold that the Fund is a plan "described in" § 401(a). Further, contrary to plaintiffs' contention, the CSRS is, in certain ways, a "tax favored" retirement arrangement. Under § 402(a) the employing agency's contributions to the Fund are not taxed to the employee when made. If it were not such an arrangement, the agency's contributions to the Fund would be taxable under § 402(b),

and in accordance with § 83, when made to the Fund.

**37.** Section 4974(c) distinguishes between "qualified pensions plans" and "eligible deferred compensation plans." The latter is provided for under § 457(b) which applies only to deferred compensation plans of state and local governments and tax-exempt organizations.

**38.** H.R.Cong.Rep. No. 841, 99th Cong., 2d Sess. II–455, *reprinted in* 1986–3 C.B. (Vol. 4) at II–455.

lump-sum distribution to plaintiffs is taxable under §§ 402 and 72 of the IRC and is not a tax free return of capital. Moreover, since the Fund is a qualified plan described in § 401(a) of the IRC, the additional 10 percent tax imposed by § 72(t) applies. Accordingly, plaintiffs' motion for summary judgment is denied and defendant's cross-motion for summary judgment is granted.[39] The Clerk is directed to dismiss plaintiffs' complaint. No costs.

IT IS SO ORDERED.

---

39. Due to the press coverage given this case, the court is indeed mindful of the effect that this decision, should it become final, may have upon the many CSRS retirees who have availed themselves of the alternative form of annuity and have received or will receive lump-sum payments and reduced annuities. However, it must be remembered that it is not this or any other court's responsibility to judicially legislate a change in the applicable statutes and regulations to avoid what some might regard as an unjust result. Under our constitutional form of government, directing such a fundamental change in our tax laws, particularly when that change would have an immediate and highly negative impact upon the budget, is clearly the sole province of the United States Congress. Obviously, plaintiffs and all others aggrieved by this decision are free to seek appropriate legislative relief from the Congress.