**Marvin H. and Kathleen G. TEGET, Appellees,**

v.

**UNITED STATES of America, Appellant.**

**No. 76–1502.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1977.

Decided March 25, 1977.

---

Francis J. Gould, Atty., Dept. of Justice, Tax Div., Washington, D. C. (argued), for appellant. Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Chief, App. Section, Leonard J. Henzke, Jr., and Francis J. Gould, Attys., Tax Div., Dept. of Justice, Washington, D. C., and William F. Clayton, U. S. Atty., Sioux Falls, S. D., of counsel on appendix and on briefs.

Walter R. Brown (argued), and David C. Bauer, Des Moines, Iowa, on brief, for appellees.

Before BRIGHT and HENLEY, Circuit Judges, and HARPER, Senior District Judge.*

BRIGHT, Circuit Judge.

Nicolson, Inc., formerly Gurney Seed and Nursery Co., in connection with a § 337 corporate liquidation (I.R.C. § 337), contributed $302,000 to a trust created in 1968 for the benefit of its executive employee, Marvin Teget,[1] in satisfaction of deferred compensation obligations owed the employee under an employment contract. The Government sought to assess and collect income taxes from employee Teget, contending that the contribution to the trust constituted gross income to the employee under I.R.C § 402(b). Teget paid the additional taxes claimed by the District Director of Internal Revenue, and then brought this action in district court for refund of these taxes. The district court in a bench trial gave judgment for the taxpayer, and the United States brought this appeal. For reasons stated below, we reverse.

Commencing November 1, 1960, taxpayer Marvin H. Teget was employed as vice president and general manager of Gurney Seed & Nursery Company (Gurney Seed), a corporation. The employer corporation operat-

---

* ROY W. HARPER, Senior District Judge, Eastern District of Missouri, sitting by designation.

1. The appellees are taxpayers Marvin H. Teget and Kathleen G. Teget, his wife, the latter named as a formal party to the litigation because she and her husband filed a joint tax return.

ed a mail order seed and nursery company at its principal place of business in Yankton, South Dakota. Teget owned approximately 15 percent of the shares of Gurney Seed.

On December 27, 1965, Teget and the employer entered into an employment agreement providing for deferred compensation. The amount of deferred compensation Teget earned was computed annually,[2] and added to a deferred compensation "pool." The employer accounted for this obligation through bookkeeping entries, but the assets represented by the pool account were not segregated or set aside. The employment agreement provided for payment of deferred compensation in 15 annual installments following termination of the agreement.

On May 24, 1968, Gurney Seed entered into preliminary negotiations to sell all of its assets and to transfer most of its liabilities to an acquiring corporation. The acquiring corporation expressly declined to assume the obligation for deferred compensation owed to Teget under the employment contract. Following the execution by Gurney Seed of a letter of intent to sell, Teget and Gurney Seed amended the existing employment contract on June 15, 1968 to provide for a trust for the benefit of Teget to be created upon the transfer of assets by Gurney Seed to the acquiring corporation. The amendment read:

It is further provided that in the event Teget's employment hereunder is terminated as a result of a sale of substantially all of the operating assets of the Company and Teget is employed by the purchaser of the operating assets or a corporation affiliated with the purchaser, before October 31 of year of sale, the Company shall transfer assets of a value equivalent to the amount of the deferred compensa-

tion, calculated as of the effective date of sale, into a trust created by the Company for Teget's benefit in the form of a Trust Agreement set out as Exhibit "A" hereto and the Company's liability hereunder shall cease. Payments of the deferred compensation pool to Teget, under these circumstances, shall be made in accordance with the provisions of the said Trust Agreement in lieu of the method and times of payment provided elsewhere in this Agreement.

On July 30, 1968, Gurney Seed executed a contract of sale to the acquiring corporation in conformity with its prior letter of intent. Thereafter, on August 28, 1968, the stockholders of Gurney Seed adopted a plan of liquidation under § 337 of the Internal Revenue Code and changed the name of the corporation from Gurney Seed & Nursery Company to Nicolson, Inc. The sales transaction was consummated on August 29, 1968. Teget's employment with Gurney Seed then terminated and he became an employee of the acquiring corporation, but, in accordance with prior arrangements, that corporation did not assume the obligation to pay deferred compensation to Teget.

In October 1968, in conformity with the amended employment contract, Nicolson, Inc., formerly Gurney Seed, created an irrevocable trust for the benefit of Teget and, upon Teget's death, his estate. Walter R. Brown, Teget's attorney, was named trustee. Nicolson, Inc. then paid to the trustee the sum of $302,000, the amount of deferred compensation owed Teget as calculated under his employment agreements.

The trust instrument directed the trustee to pay the income from the corpus for the benefit of Teget during the period that Teget remained in the employ of the acquiring company. In addition, the trust agreement provided that after termination of

---

2. According to the employment agreement, the annual addition to Teget's deferred compensation "pool" was the sum of:

(a) Each year's bonus paid to the taxpayer, plus

(b) Five percent of the net worth of the company at the termination of the agreement, plus

(c) Fifteen thousand dollars per year for each full year of employment (to a maximum of five years) under the agreement, plus

(d) Five percent of the gain realized on the sale of the assets of the company if substantially all of the assets were sold within five years of the termination of the agreement.

that employment, Teget would receive the trust corpus in 15 annual installments. The trust instrument also granted the trustee the power, at any time and in his sole discretion, to pay out the corpus of the trust "to provide for the care, support, and maintenance of Marvin H. Teget, or in the best interests of his estate, if he be deceased." In light of these stipulated facts, we examine applicable Revenue Code provisions.

## I.

Specific sections of the Internal Revenue Code govern the taxation of various forms of compensation paid by an employer to a trust for the benefit of employees. The parties agree that where an employer creates a "qualified trust" for the benefit of employees or their beneficiaries, the contributions to the trust are deductible by the employer; the employee incurs no tax liability from the transaction until actual payment or distribution from the trust; and the trust itself is exempt from taxation upon trust income. I.R.C. §§ 401–04, 501(a). For the 1968 tax year, § 401(a) contained several requirements for the qualification of trusts. One relevant requirement was as follows:

(a) A trust * * * shall constitute a qualified trust under this section—

(4) if the contributions or benefits provided under the plan do not discriminate in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees. [I.R.C. § 401(a)(4)(1968).]

It is undisputed that the Teget trust cannot qualify under § 401(a) because, among other reasons, the trust inures solely to the benefit of a single executive officer of the employer-corporation.

Nonqualified employees' trusts receive less desirable tax treatment. The trust income is not tax exempt under § 501(a); the employer gets no tax deductions for contributions to the trust unless the payment is nonforfeitable when made, I.R.C. § 404(a)(5); and, most pertinent here,

§ 402(b) expressly states that nonforfeitable contributions to such a trust for the benefit of the employee shall be included in the gross income of the employee for the taxable year in which the contribution was made. The relevant text of § 402(b) reads:

*Contributions to an employees' trust made by an employer during a taxable year of the employer which ends within or with taxable year of the trust for which the trust is not exempt from tax under section 501(a) shall be included in the gross income of an employee for the taxable year in which the contribution is made to the trust in the case of an employee whose beneficial interest in such contribution is nonforfeitable at the time the contribution is made.* * * * [I.R.C. § 402(b) (1968) (emphasis added).]

The district court in granting the taxpayer relief in this litigation determined that the trust in question did not constitute an "employee trust" as envisioned in § 402(b). The court gave the following reasons for its holding:

1) The parties created the trust to effectively comply with the requirements of section 337—all of the assets had to be distributed within 12 months, less any assets retained to meet claims—because full compliance with that section was of paramount importance to the corporation.

2) Treasury regulations (Sec. 1.337–2(b)), supplementing § 337 and Revenue Ruling 72–137; 1972–1 C.B. 101, permit the use of a trust arrangement to meet expected or contingent claims of creditors, and the amount due Teget was "contingent" upon termination of his employment.

3) Because the employer-employee relationship between Nicolson and Teget was terminating at this time, unlike an ongoing employment relationship normally associated with an employee trust, the trust was more in the nature of an arrangement between a liquidating corporation and a general creditor.

4) Teget has not received nor had he a right to receive any of the $302,000, but when he does in fact receive annual install-

ments from the trust, it will then be taxable to him.

We disagree. Section 402(b) straightforwardly reaches the issue before us and provides that contributions to an "employees' trust which is not exempt from tax under § 501(a) shall be included in the gross income of an employee for the taxable year in which the contribution is made." The express language of § 402(b) requires that the employer's contributions of $302,000 to the Marvin H. Teget Trust in 1968, be included in the beneficiary's gross income.

The term "employees' trust" is not specifically defined in § 402(b). The phrase is descriptive and must be construed consistently within the context of §§ 401–407 (I.R.C. §§ 401–407 (1968)), relating to deferred compensation arrangements made by way of "qualified pension, profit sharing, and stock bonus plans."

The Teget trust clearly fits the general descriptive terminology of an "employees' trust" as used in § 402(b) and related sections. The parties by contract planned the creation of a trust by an employer, Gurney Seed, for the benefit of the trustor's employee, Teget. The corpus of the trust consists solely of a lump sum payment by the employer of deferred compensation previously earned by the employee-beneficiary. Accordingly, the tax consequences flowing from the creation of the Teget trust are controlled by § 402(b).

The legislative history of § 402(b) supports our conclusion. The predecessor of § 402(b) was § 165(c) of the Internal Revenue Code of 1939. Section 165(c) was a part of legislation enacted to change the prior law under which employer contributions to pension plans benefiting only highly paid executives were not taxed to the executives until the time of distribution after their retirement.[3]

The trust in Teget's case was created under a deferred compensation plan which benefited only Teget, a vice president and general manager of the corporation. The language of § 402(b) was intended to close a tax loophole previously benefiting executive employees such as Teget. The regulations are consistent with the legislative history in interpreting the statutory language found in § 401(a) "exclusive benefit of * * * employees" as requiring that qualified compensation plans not benefit shareholders, and not discriminate in favor of corporate officers. See Treas.Reg. § 1.401–1(b)(2–4).

II.

Taxpayer argues, and the district court found, that the Teget trust is a liquidation trust authorized by § 337 of the Revenue Code of 1954, and therefore the trust is not an "employees' trust" governed by the provisions of § 402(b).[4] We examine this contention.

---

**3.** Goodfellow, *The Tax Consequences of Pension Trusts and Employer Purchased Annuities to Employee or Beneficiary,* 39 Calif.L.Rev. 204 (1951); *Commissioner of Internal Revenue v. Pepsi-Cola Niagara Bottling Corp.,* 399 F.2d 390, 392 (2d Cir. 1968).

**4.** The taxpayer argued as follows:

That the trust at issue is a liquidation trust mandated by § 337 of the Internal Revenue Code of 1954 and established in conformance with that section seems beyond question. This conclusion is apparent from the circumstances surrounding the trust's creation.

When on August 28, 1968, Nicolson, Inc. adopted its plan of liquidation under § 337, as shown in the Statement of the Case, it confronted an obstacle to that liquidation in the form of taxpayer's deferred compensation agreement with said corporation. The purchasing corporation of Nicolson, Inc. had not

agreed to assume said liability. Since under the terms of taxpayer's deferred compensation agreement with Nicolson, Inc., the deferred compensation liability was to be paid out to taxpayer over a period of years following taxpayer's termination of employment. * * * Section 337's 12-month distribution requirement became problematic. Section 337 among other things mandates that for a corporation to enjoy the nonrecognition benefits of that section, the corporation must, within 12 months of the date of the adoption of a plan of liquidation, distribute all of the corporation's assets in complete liquidation. * * * Obviously, some disposition of the liability accrued to taxpayer's benefit under the deferred compensation agreement with Nicolson, Inc. was necessary in order for Nicolson, Inc. to fulfill § 337's 12-month distribution requirement.

An examination of the text, history, and regulations demonstrates the inapplicability of § 337 as determinative of the tax consequences in this case. I.R.C. § 337, as pertinent, reads as follows:

(a) General rule.—

If—

(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and

(2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims, then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

[I.R.C. § 337 (1968).]

By its explicit language, that section permits a corporation to avoid recognition of gain or loss from the sale of assets if, within 12 months after the date the corporation adopts a plan of liquidation, it distributes its assets in that liquidation, less assets retained to meet claims. The language of § 337 is silent on the subject of the tax consequences of liquidating distributions to taxpayers other than the liquidating corporation.

An examination of the history of § 337 demonstrates that its enactment rested upon special peculiarities in the tax laws governing liquidating corporations. Prior to passage of § 337, the Supreme Court in *Commissioner of Internal Revenue v. Court Holding Co.,* 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981 (1945), held that a liquidating

> The solution was found in the Government's own Treasury Regulations and Revenue Rulings under § 337. Treasury Regulation 1.337–2(b) provides as follows:
>
> > A corporation will be considered to have distributed all of its property other than assets retained to meet claims even though it has retained an amount of cash equal to its known liabilities and liquidating expenses plus an amount of cash set aside under arrangements for the payment after the close of the 12-month period of unascertained or contingent liabilities and contingent expenses.
>
> This regulation is further amplified by Revenue Ruling 72–137, 1972–1 C.B. 101, 102

corporation could not escape capital gains tax from the sale of its sole asset if the corporation had arranged the sale, although the shareholders consummated that sale after receiving the asset upon corporate liquidation. Subsequently, in *United States v. Cumberland Public Service Co.,* 338 U.S. 451, 70 S.Ct. 280, 94 L.Ed. 251 (1950), the Court reached a contrary conclusion under circumstances in which the shareholders (not the corporation) had arranged for the sale of corporate assets after distribution. As noted in *Central Tablet Mfg. Co. v. United States,* 417 U.S. 673, 94 S.Ct. 2516, 41 L.Ed.2d 398 (1974),

> [t]here is nothing in the legislative history indicating that § 337 was enacted in order to eliminate "double taxation" as such. Rather, the statute was designed to eliminate the formalistic distinctions recognized and perhaps encouraged by the decisions in *Court Holding* and *Cumberland.* * * * The statute was meant to establish a strict but clear rule, with a specified time limitation, upon which planners might rely and which would serve to bring certainty and stability into the corporation liquidation area. [*Id.* at 682, 94 S.Ct. at 2521.]

It seems clear that neither the language of § 337, nor its history justifies its application in this case as a basis for disregarding the rule of § 402(b)—that employer contributions to an employees' trust which is not exempt from tax under § 501(a) constitute gross income to the employee.

■ We also examine the regulation under § 337, cited by appellee which, as pertinent, reads:

> which provides that "[t]he ability of the corporation to retain assets for the purpose of meeting expected or contingent claims, as provided in § 1.337–2(b) of the Regulations, does not prevent an alternative procedure of transferring funds to a trustee for the same purpose.
>
> * * * * * *
>
> What taxpayer is arguing * * * is that because of the nature and character of a liquidating trust, it necessarily is distinctly dissimilar to a trust taxable under § 402(b), so as not to be covered by that section.

A corporation will be considered to have distributed all of its property other than assets retained to meet claims even though it has retained an amount of cash equal to its known liabilities and liquidating expenses plus an amount of cash set aside under arrangements for the payment after the close of the 12-month period of unascertained or contingent liabilities and contingent expenses. Such arrangements for payment must be made in good faith, the amount set aside must be reasonable, and no amount may be set aside to meet claims of shareholders with respect to their stock. * * * [Treas. Reg. § 1.337–2(b).]

This regulation, consistent with the statutory purpose of § 337, is relevant to the issue of whether a "complete liquidation" of a corporation occurred within the statutory 12-month period, but in no way governs the income tax consequences to persons receiving funds under such a liquidation.[5]

Additionally, contrary to taxpayer's argument, the creation of the trust did not serve as a mere substitute for the preexisting deferred compensation arrangement. Under the employment contracts in effect prior to June 15, 1968, the employer had not specifically funded the obligation to make future payments to Teget. That obligation was funded by the creation of the trust. Additionally, Teget acquired an immediate right to receive current income from that deferred compensation fund, now the trust, and the benefit of a power granted to the friendly trustee to distribute the corpus to Teget at any time.

III.

In sum, the statute, the legislative history, and the regulations relating to corporation liquidations in no manner are directed to the tax status of any taxpayer save a liquidating corporation which sells its assets within the 12-month period of its liquidation. Thus, the express language of § 402(b) applies to this tax controversy and the employer contributions to the nonexempt trust as made in 1968 became part of Teget's gross income.[6]

5. Revenue Ruling 72–137, 1972–1 C.B. 101, cited by appellee and the district court, amplifies the regulations. The regulations and Revenue Ruling 72–137 permit the liquidating corporation, without losing the tax advantages of § 337, to retain cash to pay "expected or contingent" claims which come due after 12 months, or in lieu thereof, to transfer assets to a trust owned by the shareholders for the purpose of paying creditors. The Revenue Ruling indicates that such a liquidating trust is owned by the shareholders who are taxable on any income therefrom. That ruling, in part, provides:

The transfer by the corporation of the 10x dollars to the trustee is also considered a distribution by the corporation of this property. The ability of the corporation to retain assets for the purpose of meeting expected or contingent claims, as provided in section 1.337–2(b) of the regulations, does not prevent an alternative procedure of transferring funds to a trustee for the same purpose.
* * * * * *
[T]he shareholders are considered the "owners" of the trust and are taxable on the income therefrom. * * *
[Rev.Rul. 72–137, 1972–1 C.B. at 102.]
It may well be that under such a trust arrangement a liquidating company might transfer assets to a trust owned by the shareholders, which trust funds would be used to pay late

maturing claims. In that instance, a creditor having no present interest in trust assets may not receive income under § 402(b) until actual receipt of payment. But the parties have not proceeded in that manner in the present case. Neither Nicolson, Inc. nor its shareholders retained any interest in the trust corpus.

6. The Government also argues that the payment made by the employer to Teget of $302,000 in 1968 would be taxable to Teget under assignment of income principles on the basis that Teget could not defer taxation on this amount of money by assigning the funds to a trustee. See United States v. Basye, 410 U.S. 441, 93 S.Ct. 1080, 35 L.Ed.2d 412 (1973). Further, the Government argues that taxpayer constructively received the $302,000, notwithstanding the fact that technically his attorney, as trustee, controlled the funds. The Government points to the provisions of the trust agreement which empowered the trustee to pay the corpus to Teget at the trustee's discretion "as necessary or advisable, to provide for the care, support, and maintenance" of Teget. While there may be merit to these arguments of the Government, the district judge did not address them, noting:

The government also cites the doctrines of constructive receipt, economic benefit and assignment of income. However, at oral argument counsel for the government acknowledged that this was more in the nature of

Reversed and remanded for further proceedings consistent with this opinion.

blunderbuss pleading, the outcome hinged on the correct application of section 402(b).

In light of our construction of § 402(b), we deem it unnecessary to address these contentions.