Annie May PRICE, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. No. H–77–332.

United States District Court,
D. Maryland.

Oct. 30, 1978.

Edwin J. Wolf, Baltimore, Md., for plaintiff.

Gregory S. Hrebiniak, Tax Div., U. S. Dept. of Justice, Washington, D. C., for defendant.

ALEXANDER HARVEY, II, District Judge:

In this civil action, plaintiff, a retired Baltimore City schoolteacher, is seeking refund of $498.00 in income tax which she paid after the Internal Revenue Service determined that a lump sum return to her of excess pension contributions in the amount of $2,434.21 was ordinary income.[1] The case was tried pursuant to an agreed stipulation of facts. Both parties have filed memoranda in support of their respective positions, several exhibits have been admitted in evidence and the Court has heard oral argument. For the reasons discussed hereinafter, this Court is satisfied that the lump sum distribution received by plaintiff must be treated as ordinary income and that therefore the determination made by the Internal Revenue Service was correct as it applied to plaintiff.

---

1. This determination was made in Rev. Rule 74 416, 1974 2 C.B. 31, in response to a request for advice submitted by the plaintiff and other recipients of the same lump sum distributions. Thus, plaintiff is here challenging the correctness of that Revenue Ruling.

## I

### The facts

Plaintiff was employed as a public school-teacher for the City of Baltimore until she retired on September 1, 1965, following more than twenty years of service. During her employment, she was a member of the Retirement System of the City of Baltimore (hereinafter the "City System"), and she made voluntary contributions to that pension system under what was known as the "A Plan". The City System offered two different membership options, Plan A and Plan B. Those teachers who elected the A Plan made slightly greater contributions during their employment and were entitled to slightly greater pension benefits upon retirement than those who elected the B Plan. Following her retirement, she received pension benefits under the A Plan of the City System.

In 1971, the Maryland Legislature enacted Chapter 27 of the Acts of 1971, which provided that, effective July 1, 1971, all active and retired teachers of Baltimore City would be members of the Employee's Retirement System of the State of Maryland (hereinafter the "State System"). Thus, on July 1, 1971, plaintiff relinquished membership in the City System. However, the State System was less costly to the participants than was the City System. The State System offered retirement benefits at the same level as those paid under the A Plan of the City System, but required contributions merely at the level of the B Plan. With this in mind, the Maryland State Legislature in 1973 enacted Chapter 888 of the Acts of 1973, which required a refund to those Baltimore City teachers who had elected the A Plan in the amount of the difference between their contributions and the contributions they would have made at the level of the B Plan.

On September 10, 1973, the State System made a refund to plaintiff in the amount of $2,434.21, plus accumulated interest of $651.69. The Internal Revenue Service con-

tended that the $2,434.21 was taxable as ordinary income and thereafter assessed additional income taxes of $498.00.[2] Plaintiff paid this additional income tax and filed a claim for a refund, which was denied. Thereafter, plaintiff duly filed this civil action in this Court.

At the time of her retirement in 1965 and before receiving a refund of her excess contributions, plaintiff had made total contributions to the City System in the amount of $28,542.89. At that time, based on her life expectancy and the amount of retirement benefits expected to be paid, it was calculated that her anticipated total return would be $145,031.04. Thus, at the time of retirement, the ratio of her contributions to the expected return was 19.7%. As discussed hereafter, that percentage figure is known as the "exclusion ratio", and was and still is used by the Internal Revenue Service to determine the amount of the plaintiff's retirement benefits to be treated as ordinary income. In other words, plaintiff has been properly excluding from gross income 19.7% of her annual annuity received under the State System, and under the applicable tax statutes and regulations plaintiff is entitled to continue to exclude that amount from her annuity in future years, even though she has received the $2,434.21 refund in question. The sums excluded each year represent previously taxed amounts contributed by her to the pension fund.

## II

### The applicable law

Pursuant to §§ 401 and 402 of the Internal Revenue Code of 1954 (hereinafter "the Code"), § 72 of the Code governs the taxability of sums received by a retired employee from retirement plans such as those maintained by the City of Baltimore and the State of Maryland. § 72(a) and (b) provide in pertinent part as follows:

---

**2.** Additional income taxes were also assessed on the $651.69 of accumulated interest. However, plaintiff is not contesting the taxability of this sum, having conceded that this amount is taxable income.

(a) General Rule for Annuities: Except as otherwise provided in this chapter, gross income includes any amount received as an annuity (whether for a period certain or during one or more lives) under an annuity, endowment, or life insurance contract.

(b) Exclusion Ratio: Gross income does not include that part of any amount received as an annuity under an annuity, endowment, or life insurance contract which bears the same ratio to such amount as the investment in the contract (as of the annuity starting date) bears to the expected return under the contract (as of such date). * * *

Retirement payments made pursuant to pension plans such as the one involved in this case are generally derived from three sources: (1) employee contributions made periodically during employment with "after tax" dollars; (2) employer contributions made periodically during the employee's employment and not treated as income to the employee at the time they are made; and (3) interest and capital appreciation on the employee and employer contributions accrued during the employee's employment and retirement. As a general rule, so much of the pension benefits received by a retired employee that constitute his or her own previous contributions (No. 1 above) are treated as a return of capital and are not taxable as income. So much as constitute the employer's previous contributions and accrued interest and capital appreciation (Nos. 2 and 3 above) are treated as ordinary income and are taxable.

Plaintiff is here contending that since the lump sum distribution of September 10, 1973 represented a refund of excess employee contributions, it should be treated as the return of capital and should not be taxable as income. Conceding that a return of employee contributions is not taxable, the government is here contending that extraordinary payments such as the lump sum distribution of September 10, 1973 must, under § 72(e), be treated as ordinary income.

Through the use of the exclusion ratio defined in § 72(b), a taxpayer recovers tax free, over the expected life of the annuity, an amount equal to his or her total individual contributions. The exclusion ratio is determined once at the time the annuity payments begin, and except in limited circumstances not applicable here, it remains constant throughout the life of the annuity. § 72(b) of the Code; § 1.72–4(a)(4), Treas. Reg. Of course, the exclusion ratio is computed with reference to the taxpayer's life expectancy at the time of retirement, while the amount actually recovered tax free is dependent upon the actual length of the taxpayer's life. That is, the actual amount recovered tax free may be greater or less than the amount contributed, depending upon whether the taxpayer lives beyond, or dies before, the actuarially predicted date of death. In the one case on point, this feature of the system was held to be both rational and reasonable. *Waller v. Commissioner of Internal Revenue*, 39 T.C. 665, 678–80 (1963).

■ The exclusion ratio applies by its terms only to amounts "received as an annuity." Those amounts have been defined as payments made after the starting date of the annuity, in periodic installments at regular intervals over a period of more than a year, where the total amounts payable are directly or indirectly determinable at the time of the annuity starting date. § 1.72–2(b)(2), Treas.Reg. In other words, to be "received as an annuity", payments after the starting date must be both regular and anticipated. The government contends that any payment received after the starting date of the annuity, such as the refund involved here, which does not share these characteristics must be considered to be taxable as ordinary income pursuant to § 72(e) of the Code. This Court would agree. § 72(e) provides in pertinent part as follows:

(1) General Rule: If any amount is received under an annuity, endowment, or life insurance contract, if such amount is not received as an annuity, and if no other provision of this subtitle applies, then such amount

(A) if received on or after the annuity starting date, shall be included in gross income; * * *

For the purposes of this section, any amount received which is in the nature of a dividend or similar distribution shall be treated as an amount not received as annuity.

▊ Payments covered by § 72(e) include any payment other than those "received as an annuity," including "dividends or payments in the nature of dividends, *or as a return of premiums.*" § 1.72–11(a), Treas.Reg. (Emphasis added.) Thus, even though the payment to plaintiff of September 10, 1973 was the return of excess contributions, it is clearly taxable under § 72(e) and the applicable Treasury Regulations as ordinary income.[3]

Plaintiff contends that such a construction of the applicable law is unfair and unreasonable.[4] What plaintiff overlooks is the fact that her exclusion ratio remains unchanged in spite of her receipt of the lump sum refund, and that she will therefore recover tax free during the life of the annuity the proportionate amount of the refund contributed by her. Had plaintiff's exclusion ratio been computed at the outset with the refund having been then deducted from the amount of the contributions, she would have been entitled to deduct each year only 18% of the amount of the annuity.[5] Thus, she would have been paying *more* taxes throughout the life of the annuity than she has paid and will in the future continue to pay.

It is argued by plaintiff that she will be subjected to double taxation under the government's construction of the statute. On the contrary, plaintiff would receive a windfall and be paying *less* taxes than other annuitants under the theory espoused by her, since she would now be paying no income tax on the refund while still retaining an exclusion ratio initially computed with the amount of the refund included. Of course, Congress could have required that the exclusion ratio be recomputed upon receipt by a taxpayer of a refund of this sort, with the consequent necessity of readjusting and recomputing taxes for all previous years. Such an approach would be much more complicated and cumbersome than the one adopted and would require much more work on the part of the taxpayer in recomputing prior years' taxes and on the part of the I.R.S. in auditing the various recomputations. Congress adopted the more sensible approach in § 72 of permitting the exclusion ratio to remain constant while treating as taxable income extraordinary payments such as this one. The legislative history of § 72(e), which was added to the Internal Revenue Code in 1954, supports such an interpretation. H.R.Rep.No.1337, 1954, *U.S.Code Cong. & Admin.News,* at 4025, 4035.

In addition to her own claim, plaintiff has discussed in her trial memorandum the claims of other active and retired teachers who were the recipients of refund payments. Although the issues as to those taxpayers are not before the Court, quite clearly the discussion herein is dispositive of their claims for refund as well. Those teachers who had not begun receiving annuity payments at the time they received a refund and who therefore had not as yet computed an exclusion ratio are entitled to receive the refund tax free. When they retired, those teachers would compute an

---

**3.** Plaintiff's reliance on § 1.72–1(a), Treas.Reg. (one of the introductory paragraphs of the Regulations pertaining to § 72), is misplaced. The dispute here is not about the general principle embodied in § 72, but only about the mechanism for implementing that principle. When premiums are returned to the recipient in payments which are "received as an annuity," they are tax free, but when such premiums are returned to the recipient in extraordinary payments which are "not received as an annuity," they are fully taxable.

**4.** Plaintiff has withdrawn any contention in this case that the statute in question is unconstitutional. Indeed, it has been held that § 72 is constitutional and well within the taxing power of Congress. *Waller v. Commissioner of Internal Revenue, supra.*

**5.** Reducing her contributions of $28,542.89 by $2,434.21 equals $26,108.68. Applied to the anticipated total return of $145,031.04, this latter sum produces a figure of 18%.

exclusion ratio based on the amount of their contributions less the refund. For those teachers like plaintiff who had retired prior to September 10, 1973, their refunds would be fully taxable, and their exclusion ratios, as originally computed, would not be changed.[6]

For the reasons stated, judgment will be entered in favor of the defendant, with costs.

---

6. This is so even for those who, during the first three years of retirement, "received as an annuity" an aggregate sum equal to their total contributions. *See* § 72(d) of the Code; § 1.72–13(b), Treas.Reg.