A. Sidney and Helene J. MALBON,
Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. C93–5072D.

United States District Court,
W.D. Washington,
at Seattle.

Jan. 21, 1994.

W. Carl Hankla, Trial Atty., Tax Div., U.S.
Dept. of Justice, Washington, DC, Diane E.
Tebelius, Asst. U.S. Atty., Seattle, WA, for
U.S.

Thomas J. O'Rourke, Virginia H. Johnson,
Shaw, Bransford and O'Rourke, Washington,
DC, Robert O. Conoley, Bainbridge Island,
WA, for plaintiffs.

ORDER

DIMMICK, District Judge.

The Court, having reviewed the complaint,
Defendant's Motion for Summary Judgment,
Plaintiffs' Motion for Summary Judgment,
the Report and Recommendation of the Hon-
orable David E. Wilson, United States Mag-
istrate Judge, and the remaining record, does
hereby find and Order:

1. The Court adopts the Report and Rec-
ommendation;

2. Defendant's Motion for Summary Judgment is GRANTED;

3. Plaintiffs' Motion for Summary Judgment is DENIED; and

4. The Clerk is directed to send copies of this Order to all counsel of record, and to Judge Wilson.

## REPORT AND RECOMMENDATION

WILSON, United States Magistrate Judge.

### INTRODUCTION

This lawsuit was brought by Plaintiffs, who as taxpayers, filed a joint tax return as husband and wife for the year 1987. They seek a refund of a portion of the taxes they paid for that year.

It now comes before the Court on cross motions for summary judgment. The parties have filed their briefs and have stipulated to the operative facts. There are no material facts in dispute, and the only dispute between the parties is over the interpretation and application of the law. The matter is thus appropriate for resolution by summary judgment.

For the reasons set forth below, I recommend that the Court grant the motion of Defendant (the United States) for summary judgment, and deny the motion of Plaintiffs (the Malbons).

### Factual and Procedural Background

Plaintiff, Sydney Malbon, is a retired federal employee who participated in the Civil Service Retirement System ("CSRS"). He is married to Plaintiff Helene Malbon and has been so at all times material to this suit. During the course of Mr. Malbon's employment with the federal government, he contributed approximately $47,778.28 in after tax money to the CSRS fund. He retired on December 31, 1986. (The operative facts are set out in the "Stipulation" filed on August 20, 1993).

At the time of his retirement, he had a choice of retirement annuity plans, as provided by 5 U.S.C. § 8343a(b). He could accept a regular annuity which paid a fixed sum per month, or an "alternative form of annuity" (the "alternative annuity"), which would provide him with a lump-sum payment (the "Lump Sum Credit"), equal to the amount which he had paid into the CSRS fund, and a reduced annuity. Mr. Malbon chose the alternative annuity.

In 1987 he received a lump sum credit of $48,135.64 as authorized by 5 U.S.C. § 8343a, which was computed by adding his contributions to the CSRS fund during the time he was a permanent employee ($47,778.28), pre–1957 interest ($5.36), and the amount of the "Deemed Deposit" ($352.00) which the Office of Personnel Management ("OPM") awarded him to reflect the amount he would have paid into the fund had he been a participant during temporary periods of summer employment with the government before he became a permanent employee. Pursuant to his election to receive the alternative annuity, he was issued a check in 1987 for $47,783.64, equalling the Lump Sum Credit, less the Deemed Deposit.

Sydney Malbon was advised by the OPM that the Lump Sum Credit was taxable income, and Plaintiffs paid taxes totalling $13,525.14 on Mr. Malbon's Lump Sum Credit. Thereafter, Plaintiffs filed a claim for refund of $13,525.14 with the Internal Revenue Service for the 1987 tax year, contending "that the Lump Sum Credit was a tax free return of capital rather than a taxable federal retirement annuity and that the Deemed Deposit had not actually been received by Mr. Malbon." (Stipulation at 3). On or about February 15, 1991, Plaintiffs' claim for a refund of the above amount was disallowed by the IRS. (*Id.*)

Plaintiffs thereafter timely filed this suit pursuant to 28 U.S.C. § 1346(a)(1) for a refund of the tax paid, contending that it was erroneously or illegally assessed. The Malbons contend that pursuant to provisions in the United States Code, the full amount of their lump-sum payment in 1987 may be treated as a non-taxable recovery of invested capital.

The United States, as indicated in the Stipulation, does not deny the allegations made by Plaintiffs except for the claim that federal income tax was erroneously or illegally as-

sessed and collected. It contends that the Lump Sum Credit is fully taxable during the year it is received, and that, pursuant to the same provisions of the United States Code cited by the Malbons, the Malbons must recover Mr. Malbon's contributions in aliquot portions over many years, rather than all at once, and that the Malbons are thus not entitled to any refund for taxes paid in 1987.

As a second claim, the taxpayers argue that even if the Lump Sum Credit should otherwise be included in their gross income for 1987, they should be able to exclude the Deemed Deposit of $352.00 which OPM credited Mr. Malbon in 1987, since Mr. Malbon never actually received a disbursement representing the Deemed Deposit, during that tax year. The United States asserts that the Deemed Deposit is fully includable in income received in 1987 because Mr. Malbon received the full benefit of the Deemed Deposit that year, when his annuity was calculated based (in part) upon the Deposit.

Both questions are questions of "first impression" in the Ninth Circuit, although two Circuits, the Federal Circuit and the Fifth Circuit, have held for the government on the question of the taxability of the Lump Sum Deposit. See Shimota v. United States, 21 Cl.Ct. 510 (1990), aff'd, 943 F.2d 1312 (Fed. Cir.1991), cert. denied, —— U.S. ——, 112 S.Ct. 1669, 118 L.Ed.2d 389 (1992); and Guilzon v. Commissioner, 97 T.C. 237, 1991 WL 146887 (1991), aff'd, 985 F.2d 819 (5th Cir. 1993); contra Montgomery v. United States, 829 F.Supp. 1061 (S.D.Ind.1993).[1] The Deemed Deposit issue appears to be one of first impression in any federal court.

### DISCUSSION

I. The Tax Status Of The Lump Sum Credit

The issues presented require an analysis of the relationship between two federal statutes, the CSRS (Title 5, United States Code, Chapter 83) and the Tax Code (Title 26,

United States Code). Plaintiffs and the government are unable to agree as to that relationship and as to its tax consequences for the lump sum credit received by Mr. Malbon. They are joined in that disagreement by some federal courts, as indicated above.

The parties agree that annuities, including CSRS payments, are taxed according to the rules contained in 26 U.S.C. § 72. See Shimota v. United States, 21 Cl.Ct. 510, 521 (1990), aff'd, 943 F.2d 1312 (Fed.Cir.1991) (adopting Claims Court's opinion), cert. denied, —— U.S. ——, 112 S.Ct. 1669, 118 L.Ed.2d 389 (1992). In general, all amounts received as annuity payments are included in "gross income" (26 U.S.C. § 72(a)). Taxpayers may exclude from their gross income, however, "that part of any amount received as an annuity . . . which bears the same ratio to such amount as the investment in the contract . . . bears to the expected return under the contract" (§ 72(b)). Section 72(b) permits the taxpayer to recover his or her basis in the annuity over the life of the annuity contract.

The government's argument in this case is that the Malbons must recover their basis (Mr. Malbon's contributions) in the annuity over the life of his annuity arrangement with the government, as provided in §§ 72(a) & (b). That is, he is entitled to exclude from his gross income, annually, a portion of the amounts he has contributed to the CSRS, since taxes were indeed already paid upon those contributions, but that he may not "receive full credit up front" by contending that his lump sum credit is completely nontaxable during the year he received it. (United States' Memorandum in Support of Motion for Summary Judgment at 11, hereinafter "United States' Memo").[2] Rather than being excludable as a return of invested capital, the government argues that the lump sum credit which Mr. Malbon received in 1987 is fully taxable under § 72(e), because it is an extraordinary payment which was received

---

1. According to the Clerk of Court for the U.S. District Court, S.D. Indiana, the Montgomery case is on appeal to the U.S. Court of Appeals for the 7th Circuit.

2. The government contends that under its interpretation of the statutes, Mr. Malbon's estate

would be entitled to a deduction in the last tax year of his life, for any portion of the contributions not used up by deducting aliquot portions during the period of his retirement annuity. (United States Memo at 11, n. 8, citing Section 72(b)(3)(A)).

"*under* an annuity" (§ 72(e)(1)(A)(i), emphasis added), but "*not* received *as* an annuity" (§ 72(e)(1)(A)(ii), emphasis added).[3]

Mr. Malbon argues, however, that under 26 U.S.C. § 72(d), employee contributions "*under a defined contribution plan*" (emphasis added) are treated as a "separate contract"[4] and are excludable from gross income for federal income tax purposes, under § 72(e)(5)(E).[5] He argues that his contributions to the CSRS satisfy the "separate contract" requirements found in 26 U.S.C. § 414(i)–(k),[6] and thus that he may exclude the lump sum credit as provided in § 72(e)(5)(E).

The government concedes that if the Malbons could establish that the lump-sum payment qualifies as a "defined contribution plan," they should not have been taxed on it and are due the claimed refund. The government argues, however, that "the requirements of Section 414(k) are not present here . . . [and] [t]hus Section 72(d) cannot apply." (United States Memo. at 8).

As indicated, the federal courts which have reviewed the question of whether CSRS contributions such as Mr. Malbon's constitute a "defined contribution plan" as described in § 414(k), *and thus* a "separate contract" for purposes of § 72(d), the refund of which may be excluded from gross income as provided for in § 72(e)(5)(E), have reached different conclusions. Plaintiffs' counsel here were the counsel for the respective taxpayers in all three of the previous cases to which the parties refer, and appear to have advanced the same arguments in all of the cases. Similarly, the government's arguments appear to track its positions in the earlier cases. No new and alternative routes to resolving the issues are advanced in the briefs of the parties now before the Court, and no alternative routes to resolution suggest themselves to this Magistrate Judge. The Court thus has before it in the cited opinions, two opposing results in which the respective courts have provided their reasoning.

Having reviewed the opposing decisions relied upon by the parties for their arguments here, along with their submitted briefs, it is my recommendation, for the rea-

---

**3.** § 72(e)(a)(A)(i) & (ii) provide:

(1) *Application of subsection.—*
(A) *In general.*—This subsection shall apply to any amount which—
(i) is received under an annuity, endowment, or life insurance contract, and
(ii) is not received as an annuity.

**4.** (E) *Full refunds, surrenders, redemptions, and maturities,—This* paragraph shall apply to—

(i) any amount received, whether in a single sum or otherwise, under a contract in full discharge of the obligation under the contract which is in the nature of a refund of the consideration paid for the contract, and
(ii) any amount received under a contract on its complete surrender, redemption, or maturity. In the case of any amount to which the preceding sentence applies, the rule of paragraph (2)(A) shall not apply.
26 U.S.C. § 72(e)(5)(E).

**5.** *Treatment of Employee Contributions Under Defined Contribution Plans as Separate Contracts.—* For purposes of this section, employee contributions (and any income allocable thereto) under a defined contribution plan may be treated as a separate contract. 26 U.S.C. § 72(d).

**6.** (i) *Defined Contribution Plan.*—For purposes of this part, the term "defined contribution plan" means a plan which provides for an individual account for each participant and for benefits based solely on the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account.

(j) *Defined Benefit Plan.*—For purposes of this part, the term "defined benefit plan" means any plan which is not a defined contribution plan.

(k) *Certain Plans.*—A defined benefit plan which provides a benefit derived from employer contributions which is based partly on the balance of the separate account of a participant shall—

(1) for purposes of section 410 (relating to minimum participation standards), be treated as a defined contribution plan,
(2) for purposes of sections 72(d) (relating to treatment of employee contributions as separate contract), 411(a)(7)(A) (relating to minimum vesting standards), 415 (relating to limitations on benefits and contributions under qualified plans), and 401(m) (relating to nondiscrimination tests for matching requirements and employee contributions), be treated as consisting of a defined contribution plan to the extent benefits are based on the separate account of a participant and as a defined benefit plan with respect to the remaining portion of benefits under the plan, and
(3) for purposes of section 4975 (relating to tax on prohibited transactions), be treated as a defined benefit plan.
26 U.S.C. § 414(i)–(k).

sons immediately below, that the Court adopt the reasoning in *Guilzon* and find for the United States on this issue.

The parties agree that the issue now before the Court turns on whether the return of Mr. Malbon's CSRS contributions to him in 1987, constitute a return of funds from a "defined contribution plan," entitling them to be treated as a "separate contract" under § 72(d), and to be excluded from gross income that year as provided by § 72(e)(5)(E). As noted in *Guilzon*, the Tax Code provides "three overall plans under which all retirement plans fall: the defined contribution plan, the defined benefit plan, and a hybrid plan" (*Guilzon*, 985 F.2d at 821) (footnotes omitted). They are:

A *defined contribution plan* must provide for "an individual account for each participant and for benefits based solely on the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." Section 414(i).

A *defined benefit plan* is "any plan which is not a defined contribution plan." § 404(j).

A *hybrid plan* is one which is part defined contribution plan and part defined benefit plan. (§ 414(k)).[7] Both sides agree that it is this section which Mr. Malbon must fit himself into, if he is to prevail under § 72(d). All agree that in order to do so, he must establish two things: 1) that his lump sum credit was a separate account; and 2) that his retirement "benefit derived from employer contributions."

A. *The "Separate Account" Requirement is Satisfied.*

█ As to whether Mr. Malbon's lump sum credit was a "separate account" within

the meaning of 414(k), the government repeats its arguments made in *Guilzon*, that it was *not* a separate account because the CSRS Fund "does not contain a 'separate account' for each federal employee" (United States Memo at 13). The government argues that 414(k)'s "separate account" provision requires an account "to which earnings and losses are [actually] allocated." (*Id.* at 14). In order to impose this requirement under 414(k), the government argues that a "separate account" under 414(k) must be defined in terms of the "defined contribution plan" requirements of 414(i), which defines that term as requiring an "individual account for each participant and for benefits based solely on the amount contributed to the participant's account and any income, expenses, gains and losses. . . ." It argues that since no earnings and losses are allocated to the contributions held by the government for CSRS employees, that these contributions do not constitute "separate accounts." (United States Memo at 14–17). In support of its argument, the government cites a revenue "Notice" issued by the IRS so interpreting the statute: Notice 87–13, 1987–1 C.B. 432, 438 (Q & A 14).

This is an argument which the government made in both *Guilzon* and *Montgomery*. It was rejected in both forums, even though the Fifth Circuit ultimately found for the government on another basis. Both courts found that the "separate account" provision of § 414(k) was satisfied by the government's responsibility to keep separate records of each employee's contributions, even though it is not required to keep the funds themselves separate, or to allocate earnings or losses, since individual accounts under CSRS earn no interest and suffer no losses. *Guilzon*,

---

**7.** Again, Section 414(k) provides:

(k) *Certain Plans.*—A defined benefit plan which provides a benefit derived from employer contributions which is based partly on the balance of the separate account of a participant shall—

(1) for purposes of section 410 (relating to minimum participation standards), be treated as a defined contribution plan,

(2) for purposes of sections 72(d) (relating to treatment of employee contributions as separate contract), 411(a)(7)(A) (relating to minimum

vesting standards), 415 (relating to limitations on benefits and contributions under qualified plans), and 401(m) (relating to nondiscrimination tests for matching requirements and employee contributions), be treated as consisting of a defined contribution plan to the extent benefits are based on the separate account of a participant and as a defined benefit plan with respect to the remaining portion of benefits under the plan, and

(3) for purposes of section 4975 (relating to tax on prohibited transactions), be treated as a defined benefit plan.

985 F.2d at 821–23; *Montgomery,* 829 F.Supp. at 1064. Both courts analyzed the language in § 414(i) to which the government points[8] as being "permissive" and offering an option rather than a requirement. *E.g., Montgomery, supra,* at 1064. Moreover, *Guilzon* declined to give the IRS "Notice," cited by the government, an authoritative footing equal to that of "Revenue Rulings, which are to some degree authoritative." (*Guilzon,* 985 F.2d at 822) (footnote omitted.)

I agree with the conclusions of both *Guilzon* and *Montgomery* that the requirement of a "separate account" found in § 414(k) is satisfied by taxpayers in the shoes of the Malbons. Had Congress wished to use mandatory as opposed to permissive language in § 414(i), and required the actual posting of "income, expenses, gains and losses," etc., it could have done so. The fact that the contributions do not earn interest and are not subject to losses, etc., does not keep them from constituting a "separate account" under 414(k).[9]

B. *The benefit is not, however, "derived from employer contributions which is based partly on the balance of the separate account of a participant," and thus does not satisfy § 414(k).*

The second question to be answered in deciding whether the CSRS meets the requisites for satisfying § 414(k), is whether it "provides a benefit derived from employer contributions which is based partly on the balance of the separate account of a partici-

pant", as required by that Section. It is on this point that *Guilzon* and *Montgomery,* upon which the parties here rely for their respective and contrary positions, part company. *Guilzon* concluded that the taxpayer therein's retirement benefits did not depend on employer contributions:

"Mr. Guilzon's retirement benefits were in no way based upon employer contributions. The CSRS does not provide for employer contributions. CSRS retirement benefits are based upon the employee's contributions, average salary and years of employment. 5 U.S.C. § 8339. Indeed, the statute which specifically governs the type of annuity chosen by Mr. Guilzon explicitly states that 'an employee or Member may, at the time of retiring ... elect annuity benefits under this section ... *based on the service of the employee or Member.* 5 U.S.C. § 8343a(a) [emphasis in original]. Reading the CSRS statutes—5 U.S.C. §§ 8339, 8343a—consistently with the applicable Tax Code statutes—25 U.S.C. §§ 72(d), 414(k)—leaves no other conclusion but that Mr. Guilzon's retirement plan did not provide a benefit derived from employer contributions as required by section 414(k). With that conclusion, the Guilzon's house of cards falls. Without meeting the requirements of section 414(k), Mr. Guilzon's retirement plan cannot be treated as a hybrid plan, consisting of both a defined contribution plan and a defined benefit plan. All of his retirement benefits, including his lump-sum credit, fit only in the category of a defined *benefit* plan.

---

8. "... *any* income, expenses, gains and losses and *any* forfeitures ... which *may* be allocated to such participant's account." Section 414(i), *Montgomery,* 829 F.Supp. at 1063, quoting with approval *Guilzon,* 985 F.2d at 822–23, emphasis supplied by Fifth Circuit.

9. The United States cites a Ninth Circuit case interpreting the term "defined contribution plan" *in an ERISA setting,* for the proposition that simply maintaining individual accounting alone, "does not make a defined contribution plan." United States Memo at 17, citing *Connolly v. Pension Benefit Guaranty Corp.,* 581 F.2d 729, 733 (9th Cir.1978), *cert. denied,* 440 U.S. 935, 99 S.Ct. 1278, 59 L.Ed.2d 492 (1979).

   *Connolly* is of little help to the government. The court in *Connolly* noted that ERISA is a "remedial statute" designed to protect retirement

plans (581 F.2d at 732), and overturned a district court decision which would have excluded the plan in issue from coverage via "termination insurance." Applying ERISA in a remedial manner consistent with its purpose, the Ninth Circuit found that listing individual accounts in the context of their use in that case, did not make them a "defined contribution plan." (*Id.*) In finding that the Trustees of the plan were required to obtain the insurance, the Circuit ruled in a manner designed to provide the high degree of protection envisioned by ERISA.

   While *Connolly* may construe, *in an ERISA context,* some of the terms used in this case, it is not persuasive authority for differing with the CSRS/tax cases cited by both parties here, which dealt with the precise issue in this case, and reached an interpretation contrary to that reached in *Connolly.*

[Emphasis in original.] Section 72 does not provide special treatment of benefits under a defined benefit plan.... The Guilzons' lump sum credit therefor does not qualify for section 72(d) protection, and absent that protection, the lump-sum payment is subject to the tax computations outlined in section 72(e)."

*Guilzon,* 985 F.2d at 823–24.

In *Montgomery,* decided after *Guilzon,* the District Court for the Southern District of Indiana disagreed with the Fifth Circuit's conclusion in *Guilzon.* The District Court concluded that the Fifth Circuit was incorrect in its statement that "[t]he CSRS does not provide for employer contributions" (*Guilzon,* 985 F.2d at 823), since 5 U.S.C. § 8334(a) explicitly states that after the employee's deductions are withheld, "[a]n equal amount shall be contributed from the appropriation or fund used to pay the employee...." [10] The *Montgomery* court found that not only did the CSRS include within its scheme "employer contributions," but that *Guilzon.* had erred in its view that the § 414(k) language speaking of "a benefit *derived* from employer contributions" (emphasis added), was synonymous with the phrase "based upon employer contributions." The *Montgomery* court held that the benefit need not be "based upon" employer contributions, to satisfy the statutory term "derived from employer contributions" (section 414(k)), and that the statutory term would be satisfied "if the benefit received or obtained financial support from employer contributions." (*Montgomery,* 829 F.Supp. at 1065). The *Montgomery* court found that this requirement of 414(k) was satisfied by the fact that the CSRS Fund was comprised in part of employer contributions, and the alternative annuity provided annuity payments from the Fund. (*Id.*)

The *Montgomery* court went on to conclude that the alternative annuity which Montgomery received by virtue of accepting the lump sum credit, provided a benefit "based partly on the balance of the separate account of a participant" (§ 414(k)), since the decreased annuity which he will receive is determined by the amount in his separate account. Thus, the court reasoned, the alternative annuity provides a "benefit derived from employer contributions which is based in part on the balance of the separate account of a participant." (§ 414(k)). Accordingly, it found, *any* benefit under the alternative annuity scheme which is "based upon the separate account of a participant" is to be "treated as constituting a defined contribution plan" under § 72(d). *Montgomery,* 829 F.Supp. at 1066, quoting § 414(k). The Lump Sum Credit, is a "benefit" and is thus to be "treated as constituting a defined contribution plan," according to *Montgomery.*

Going on to find that the lump-sum-credit is equal to the amount of the employee's contributions to the CSRS Fund, the court concluded that since it is to be treated as a "defined contribution plan," it qualified as a "separate contract" under § 72(d). Ultimately, it found that since the lump-sum credit was equal to the amount of Montgomery's contributions, it fell within the exception created by § 72(e)(5)(E), was not gross income, and was not taxable. (*Id.*)

The United States disagrees with the District Court's analysis in *Montgomery* and considers the opinion in *Guilzon* to be the better analysis.

Initially, the government agrees that the *Guilzon* decision is incorrect in the "literal" sense, in its observation that "[t]he CSRS does not provide for employer contributions," (*Guilzon,* 985 F.2d at 823), since, as the government acknowledges, 5 U.S.C. § 8334(a), *does* provide for contributions to the CSRS Fund by the government (United States Memo at 17, n. 12). The government argues that the *Guilzon* decision remains correct, however, since the Malbon's position

10. 5 U.S.C. § 8334(a) provides in pertinent part:

(1) The employing agency shall deduct and withhold 7 percent of the basic pay of an employee.... *An equal amount shall be contributed from the appropriation or fund used to pay the employee....*

(2) The amounts so deducted and withheld, *together with the amounts so contributed,* shall be deposited in the Treasury of the United States to the credit of the Fund under such procedures as the Comptroller General of the United States may so prescribe.
*Id.,* emphasis added.

that the CSRS is *based on* government contributions is true only in the "literal" sense. (*Id.*) The government argues that although it contributes to the general funding of annuities to all participants in the CSRS Fund, payments are not based on those contributions by the government, but "on years in service and average pay" (*id.;* United States Reply to Plaintiffs' Answer to Defendant's Motion for Summary Judgment at 5, hereinafter, "United States Reply Brief").

Plaintiffs are correct in their argument that the Fifth Circuit in *Guilzon* erroneously believed, as it explicitly stated, that the CSRS system does not provide for employer contributions. Had the Fifth Circuit been correct in its assumption that no employer contributions are involved in the CSRS Fund, it would be unnecessary to proceed with an analysis of the later *Montgomery* decision. Given the existence of that incorrect premise, however, which the *Montgomery* court recognized, two questions arise: 1) was the flaw in the *Guilzon* decision fatal to the government's position; and 2) was the *Montgomery* court's analysis the correct one? It is my view that the answer to *both* questions is "no."

The government argues that the mistake was not material to the *Guilzon* decision, because (it argues), the employer contributions play no meaningful role in the CSRS fund, since they are not deposited to the individual taxpayer accounts and since they do not effect the retirement annuity of the taxpayer. That retirement annuity, the government argues, is based not on any consideration of the employer contributions, but solely on the employee's years of service and average salary (United States Memo at 17, n. 12). Thus, the government argues, even though *Guilzon* "failed to note that the CSRS requires government contributions to the Fund from which CSRS benefits are

paid," that failure was of *no moment* since *Guilzon* ultimately arrived at the correct conclusion that CSRS benefits were based upon average salary and years of employment. (*See Guilzon,* 985 F.2d at 823). The United States argues that *Guilzon* remains the correct analysis.

Further, the United States argues that *Montgomery* is flawed because the district court, unlike the Fifth Circuit in *Guilzon,*[11] "failed to read Section 414(k) in light of its purpose" (United States Memo at 19). The government contends that the failure of the *Montgomery* court to recognize this purpose lead to an incorrect result. The United States contends that the interpretation given 414(k) by the district court renders the section meaningless, since under that interpretation, both the lump-sum credit portion of the alternative annuity plan, and the remaining decreased annuity, would qualify as "defined contribution plans," leaving *no* portion of the alternative annuity plan to be treated as a "defined benefit plan".[12] Under the district court's reasoning, the government argues, there would be nothing "hybrid" about the alternative annuity plan, since both portions would qualify for treatment as "defined contribution plans." This interpretation, it is urged, in fact takes the alternative annuity plan completely outside the ambit of § 414(k), since it no longer has portions of its whole falling into both classifications. The district court's interpretation thus renders the section meaningless, the government contends, in violation of logic and the principle expressed in *Boise Cascade Corp. v. United States EPA,* 942 F.2d 1427, 1432 (9th Cir. 1991).

I agree with the government's analysis of the *Montgomery* decision, and with its argument that *Guilzon* is the best analysis, despite the Fifth Circuit's assumption that no

---

**11.** *Guilzon* noted that the purpose of section 414(k) was to provide "that when a defined benefit plan has certain defined contribution plan characteristics, the portion which *resembles* the defined contribution plan will be *treated* like a defined contribution plan under section 72(d)." *Guilzon,* 985 F.2d at 821 (emphasis in original).

**12.** The government points out that although the district court in *Montgomery* states that it was

not deciding "whether the deceased annuity payments are also a benefit based on a separate account" (*Montgomery,* 829 F.Supp. at 1066, n. 4), that the district court in fact had already concluded just that, when it observed that "the amount of the alternative annuity payment is 'based in part on the balance of the separate account of [the] participant' " (*Id.,* 829 F.Supp. at 1066, brackets in original).

employer contributions were involved in the CSRS Fund scheme. In truth, while there are "employer contributions" under the CSRS Fund scheme, they play no role whatsoever in computing the retirement benefits of a CSRS federal employee, since those benefits are computed based upon years of service and the average of salary during certain years, as correctly recognized by the court in *Guilzon. See Guilzon*, 985 F.2d at 823. The "employer contributions" under CSRS merely go into a central fund to provide the means of paying out CSRS benefits. They are never allocated to a taxpayer's separate account, and the government would presumably still be responsible for the CSRS retiree's benefits, even if failed to make the required contribution to the central fund, or even if it that fund proved to be empty for unrelated reasons, when the retiree qualified for his benefits.

The *Montgomery* court's interpretation, on the other hand, (and as the government argues), appears a strained one, relying, for example, upon an unusual interpretation of "derived from" and upon an "inverse relationship" between the "separate account of the participant" and the reduced annuity in order to find that the reduced annuity portion of the plan is "based in part on the separate account of [a] participant" (*Montgomery*, 829 F.Supp. at 1066). The *Montgomery* decision also has the inevitable result of rendering § 414(k) meaningless, by establishing an interpretation which leads to the conclusion that all benefits under the alternative annuity plan set out in the CSRS qualify for treatment as "defined contribution plan" benefits. There appears to be nothing "hybrid" about the alternative annuity plan as it is analyzed by *Montgomery*, despite the fact that its "hybrid" nature constitutes its reason for being classified under § 414(k), in the first place.

While Plaintiffs close with the claim that the "essence of Plaintiffs' position is that a distribution consisting solely of a refund of previously taxed contributions is not subject to tax" (Plaintiffs' Reply to Defendant's Brief

in Opposition at 1), that claim is not accurate. There is no question that the Malbons should not be taxed twice on the money they used for Mr. Malbon's contributions; the government does not dispute that concept. The true "essence" of Plaintiffs' position is that they are entitled to get credit for those already-paid-taxes "up front" when the lump-sum-credit is paid out, rather than having to spread that credit over the life of the annuity. The attraction to them of their preferred interpretation is entirely understandable. Indeed, few would quarrel with the logic of a system which resolved this issue in the manner preferred by the taxpayers, i.e., simply handing them back the contributions and agreeing that the taxes had already been paid on the distribution. In my view, however, Congress did not resolve it in the way they would prefer, and instead has required them to spread the tax consequences over the life of the annuity.[13] In so requiring them to spread the tax consequences over the life of the annuity, rather than obtaining those beneficial results "up front" as they would prefer, the tax scheme is not treating CSRS retirees different from others taxed under § 72(e). *See Price v. United States*, 459 F.Supp. 362, 365 (D.Md.1978).

For all the reasons set out herein and discussed in greater detail in the two opposing opinions relied upon by the parties, I recommend that the Court grant summary judgment to the United States on this issue.

*THE DEEMED DEPOSIT IS TAXABLE UNDER SECTION 61(a) BECAUSE TAXPAYER RECEIVED AN ECONOMIC BENEFIT WHEN THE OPM USED IT IN COMPUTING HIS RETIREMENT ANNUITY.*

■ The second issue presented by the cross motions for summary judgment is whether the Deemed Deposit of $352.00 was taxable as "income" received by the Malbon's in the year it was awarded. The "Deemed Deposit" is the credit which Mr. Malbon received for the periods in which he was working for the federal government in a non-

13. Plaintiffs also close with the argument that their position is supported by the "legislative history of relevant portions of both statutes" (*Id.*

at 2). In my view, *Guilzon* was correct in specifically rejecting those arguments. *See Guilzon*, 985 F.2d at 823, n. 11).

permanent category and not paying into the CSRS Fund. By receiving the Deemed Deposit credit, Mr. Malbon's annuity was determined as if he had made deposits during those periods of temporary employment, and he received a higher annuity as a result of his Deemed Deposit.[14]

Plaintiffs argue that Mr. Malbon did not receive a distribution in 1987, and that the CSRS Fund is a qualified trust plan. He cites *Teget v. United States*, 552 F.2d 236, 239 (8th Cir.1977), for the proposition that "where an employer creates a 'qualified trust' for the benefit of employees or their beneficiaries ... *the employee incurs no taxable income until actual payment or distribution from the trust.*" (Emphasis supplied). Plaintiff argues that accordingly, he should not have to pay taxes on the Deemed Deposit in 1987, although his taxable income will be increased for subsequent years, as a result of the Deemed Deposit.

The government argues that the Deemed Deposit was fully taxable under § 72(e) in 1987, since Section 61(a) of the tax code provides that "gross income" means "all income" from whatever source derived. It argues that the Malbons received an economic benefit in 1987 when the Deemed Deposit was recorded and began having its intended effect of increasing the value of their annuity payments. The government points out that the economic benefit doctrine has been applied to the taxation of annuity contributions in such cases as *United States v. Drescher*, 179 F.2d 863 (2d Cir.), *cert. denied*, 340 U.S. 821, 71 S.Ct. 53, 60, 95 L.Ed. 603 (1950), and *Ward v. Commissioner*, 159 F.2d 502 (2d Cir.1947). It argues that those cases establish that the employee's tax is due on the premium paid on his annuity in the year it is placed at Mr. Malbon's disposal. The Deemed Deposit here was placed at his disposal in 1987 and became taxable at that time.

The United States does not appear to contest Plaintiffs' assertion that the CSRS is a

qualified trust plan, but argues that under Plaintiffs' reasoning, all of Mr. Malbon's contributions prior to retirement should have been exempt from taxation, since the Deemed Deposit occupies the same status as his contributions, i.e., *he* is "deemed" to have deposited the $352.00 as if he had done it from his salary while working as a temporary employee. "To put it another way, Taxpayer loses sight of the fact the Deemed Deposit is an amount deemed to have been paid to him and then deemed to have been deposited by him into the Fund." (United States Reply at 6–7).

I find the United States' argument more persuasive on this point. The nature of the Deemed Deposit in this case distinguishes it from the arrangement in *Teget*, upon which Plaintiff relies. Plaintiff did in truth receive an economic benefit from the Deemed Deposit in 1987, and that economic benefit constitutes income under the controlling law.

I thus recommend that the Court grant Defendant's Motion for Summary Judgment as to this issue.

### Conclusion

For the reasons set forth, I recommend that the Court grant the Motion for Summary Judgement filed by Defendant United States and deny the Motion for Summary Judgment filed by Plaintiffs.

DATED this 22nd day of November, 1993.

---

14. As with the other facts in this case, the facts surrounding this issue are not in dispute, and it is thus an appropriate one for disposition via summary judgment.

The Deemed Deposit represents a credit for calculating Mr. Malbon's annuity only. He did not receive a distribution representing the $352.00 Deemed Deposit when he received his Lump–Sum Credit distribution.